## ESTATE OF BISBEE.

*March 17—April 11, 1922.*

*Equitable conversion: Exercise of option to purchase land: When conversion took place: Date of option or of its exercise: Death of grantor in option: Exercise after his death: Who entitled to proceeds.*

1. Where an owner of land had given an option for its purchase, which was exercised after his death, the conversion of the land into money took place as of the date of the exercise of the option and not as of the date of the option, and the proceeds descended to the heirs as real estate and not as personal property.
2. When directions in a will or enforceable conditions in a contract are definite enough and of such a nature that it is apparent that the owner of real or personal property intends that one shall, at a fixed or uncertain time, be changed from one form of property to the other, a court of equity will consider the change to have taken place as intended by the owner, and real estate will be regarded as personal property, or *vice versa.*
3. Equity regards that as done which is clearly intended to be done or which is contracted to be done, but not that which only may be done.
4. Land having been conveyed by the administrator, and those claiming the proceeds as real estate and those claiming them as personal property both having affirmed the sale and asked for their respective shares of the purchase money, the grantees had a perfect title as against any claim of either.

APPEAL from an order of the county court of Lincoln county: M. C. PORTER, Judge. *Reversed.*

On March 19, 1919, E. T. Bisbee, deceased, then a widower, and the owner in fee simple of certain real estate in Lincoln county, leased the same to E. B. Schumacher and C. F. Lambrecht for two years and gave them an option to purchase the same at any time within two years upon the payment of $6,000. November 27, 1919, Mr. Bisbee married the respondent *Winnie K. Bisbee.* On February 1, 1920, Mr. Bisbee died intestate, and on March 13th the lessees exercised their option to purchase. The property was conveyed to them by the administrator, and the purchase money, less the amount of a mortgage on the premises, was ordered distributed as personal property in equal shares to the widow and to two infant children of a deceased daughter and only child of E. T. Bisbee, deceased. From such order the guardian *ad litem* of the infant children appealed.

For the appellant the cause was submitted on the briefs of *Richard B. Runke* of Merrill, guardian *ad litem.*

For the respondents there was a brief by *J. & M. Van Hecke* of Merrill, attorneys for *Winnie K. Bisbee,* and *F. J. & A. H. Smith* of Merrill, attorneys for the administrator, and oral argument by *John Van Hecke.*

VINJE, C. J. The question presented by the appeal is whether the option given the lessees to buy the premises, when exercised by them, related back to its date and operated to convert the real estate into personal property as of that date, so that it descended as personal property at the time of the death of Mr. Bisbee, or whether such conversion from realty to personalty took place at the time the option was exercised and it descended as real estate. This question has not been decided by our court, and the comparatively few cases we have been able to find touching it are not in harmony. We are therefore at liberty to adopt

the rule that seems founded upon the better reason and practice in the settlement of estates. There is no doubt or uncertainty as to the purpose and effect of the doctrine of equitable conversion. When directions in a will or enforceable conditions in a contract are definite enough and are of such a nature that it is apparent that the owner of real estate or of personal property intends that one shall at a fixed or uncertain time be changed from one form of property to the other, a court of equity will consider the change to have taken place as intended by the owner, and real estate will be regarded as personal property, or *vice versa,* as the case may be. The difficulty usually arises in determining just when such change takes effect. The doctrine of equitable conversion has long been recognized in our state (*Chandler's Appeal,* 34 Wis. 505; *Dodge v. Williams,* 46 Wis. 70, 1 N. W. 92, 50 N. W. 1103; *Harrington v. Pier,* 105 Wis. 485, 82 N. W. 345), and its existence and application to this case is not disputed. The dispute is solely as to when the conversion took place.

The respondents stress the fact that one who has a written option to purchase land has an interest in the land within the meaning of sec. 2302, Stats. 1921 (*Telford v. Frost,* 76 Wis. 172, 44 N. W. 835; *Wall v. M., St. P. & S. S. M. R. Co.* 86 Wis. 48, 56 N. W. 367), and that this court has held that where a valid contract for the purchase of land has been entered into, the rights of the purchaser and seller become fixed as of the date of the contract; and that the same is true in the case of an option. When it is exercised the rights of the parties, it is claimed, relate back to the time the option was granted. *Horgan v. Russell,* 24 N. Dak. 490 (1913), 140 N. W. 99. This may all be admitted to be the law as far as the rights of the vendor and purchaser and their assigns are concerned. But it does not determine the question as to the rights of the heirs and personal representative of the owner in the case of an outstanding option.

In the case of an absolute contract for the purchase of land, it may well be that the conversion takes place as of the date of the contract because that certainty as to result inheres in it. Not so in the case of a naked option. It may never be exercised and there is no power in the vendor to compel its exercise. It has uniformly been held even as to contracts that they will not operate an equitable conversion unless they can be specifically enforced. See note in 57 L. R. A. 648, and cases cited. This is on the theory that no conversion will be deemed to take place until there is a certainty that there will be a change of title. Equity regards that as done which is clearly intended to be done, or which is contracted to be done, but not that which only may be done.

The rule that in the case of an option to purchase real estate, exercised after the death of the owner the conversion relates back to the date of the option was first announced in *Lawes v. Bennett,* 1 Cox Ch. 167 (1785), by Chancellor KENYON. In that case the option was given to one Douglas, and the chancellor, in disposing of the question, said:

"It is very clear that if a man seized of a real estate contract to sell it, and die before the contract is carried into execution, it is personal property of him. Then the only possible difficulty in this case is, that it is left to the election of Douglas whether it shall be real or personal. It seems to me to make no distinction at all."

The distinction lies in the fact that, since equitable conversion does not take place till there is a certainty that there will be a change in the title to the real estate—till there is in existence a contract enforceable by both parties, it does not occur in the case of an option until it is exercised,—then it becomes mutually enforceable and then the conversion takes place. To relate the conversion back to the date of the option is to relate it back to a time when there was and could be no conversion, because at that time it was a unilateral contract unenforceable by specific performance and undeter-

mined whether or not the option would ever be exercised. Granted that conversion takes place at the moment there is in existence a mutual right to enforce conveyance and compel acceptance of title, such moment, in the case of an option, does not occur until the option is exercised. Granted also that when the option is exercised the right of the grantee as to enforcement against the grantor and as against those acquiring title or claim to the property with notice of the option relates back to the time the option was given, that has no bearing upon the question when equitable conversion took place, for the latter touches only the heirs and the personal representative. It does not affect the rights of the holders of the option. The two are distinct. The rights of the holder of the option do not rest upon the doctrine of equitable conversion at all.

The doctrine of *Lawes v. Bennett,* while recognized in England and to some extent in this country, has been followed with doubt as to its correctness. Thus in *Townley v. Bedwell,* 14 Ves. 591 (1808), Chancellor ELDON, speaking of it, said: "That case was very much argued; and I do not mean to say that a great deal may not be urged against it; but where there is a decision precisely in point, it is better to follow it." Page 596. In *Collingwood v. Row,* 26 L. J. N. s. 649, Vice-Chancellor KINDERSLEY said of *Lawes v. Bennett:* "When I find a case decided by so great a judge as Lord KENYON, and his decision followed by Lord ELDON, I feel that, whatever doubts I might entertain as to the propriety of the decision, I am bound to follow it." In *Isaacs v. Reginall,* [1894] 3 Ch. Div. 506, CHITTY, J., says: "It may be open to question whether *Lawes v. Bennett* could not have been decided otherwise than it was; but the question, decided nearly a century ago, has stood the test of time, and stands as a landmark upon this subject." We deem it quite significant that eminent English judges should for a century continue to suggest a doubt as to the soundness of the decision in *Lawes v. Bennett.* It has also been strictly

limited to its original facts.  Thus it has been held that where
a lessee has exercised the option to buy, after the death of
the grantor rents paid up to the time of the exercise of the
option belong to the realty heir. and not to the personal
representative.  *Townley v. Bedwell,* 14 Ves. 591.  And it
has also been held that, where the grantee of the option
dies, the exercise of it by his personal representative does not
work a conversion from the date of the option.  *In re
Adams,* L. R. 27 Ch. Div. 394.  For additional cases touch-
ing this question, see the valuable note in 57 L. R. A. 651
*et seq.,* and note in L. R. A. 1916F, 358.

*Lawes v. Bennett* has been followed by some courts of
our country and repudiated by others.  In *Newport Water
Works v. Sisson,* 18 R. I. 411, 28 Atl. 336, it is followed
without citing it.  The case is disposed of as though there
were an absolute enforceable contract and not an option that
might never be exercised.  The case of *D'Arras v. Keyser,*
26 Pa. St. 249, has been cited as holding the same rule, but
we fail to see that it involved the question at all.  In *Kerr v.
Day,* 14 Pa. St. 112, that court held that as against an inter-
vening purchaser from the vendor the rights flowing from
the exercise of the option related back to its date.  This does
not touch the question as to its effect upon the heirs.  So
also in *Peoples St. R. Co. v. Spencer,* 156 Pa. St. 85, 27
Atl. 113, it was decided that the holder of an option to
purchase real estate which he later exercised was entitled to
the insurance paid on the building burned before the option
was exercised, on the ground that as against the owner his
title, when he exercised the option, related back to its date.
No question between heir and personal representative was
here involved.  In *Smith v. Loewenstein,* 50 Ohio St. 346,
34 N. E. 159, the rule announced in *Lawes v. Bennett* is
repudiated, and the court makes this statement concerning it:
"An examination of authorities, English and American,
makes manifest that the doctrine of *Lawes v. Bennett* does

not rest upon a firm foundation." See, also, *Gilbert v. Port,* 28 Ohio St. 276.

The court of appeals of New York in *Rockland-Rockport L. Co. v. Leary,* 203 N. Y. 469, 97 N. E. 43, has also refused to follow *Lawes v. Bennett.* The court makes the following comment concerning it:

"This case has been uniformly, although at times reluctantly, followed in England, and occasionally, but not universally, in the United States, not, however, without serious criticism in both countries. *Townley v. Bedwell,* 14 Ves. 591; *Collingwood v. Row,* 3 Jur. N. s. 785; *Smith v. Loewenstein,* 50 Ohio St. 346, 34 N. E. 159. The principle has never been extended, even in England, but has been limited whenever limitation was possible without overruling Lord KENYON. *Emuss v. Smith,* 2 De G. & Sm. 722; *Edwards v. West,* L. R. 7 Ch. Div. 858. It has been regarded as 'difficult of explanation' and as creating 'a very singular and inconvenient state of things.' The main reason for following it, as an eminent English judge once intimated, is because it was 'decided by so great a man as Lord KENYON.'"

The Iowa court has held that an attachment levied upon land before an outstanding option to purchase it has been exercised is valid against the holder of the option after its exercise, on the ground that equitable conversion takes place as of the time of the exercise of the option and does not relate back to its date. *Sheehy v. Scott,* 128 Iowa, 551, 104 N. W. 1139, 4 L. R. A. N. s. 365.

There is another practical reason why the rule herein adopted is better than that announced in *Lawes v. Bennett* and it is this: Where there is an outstanding option at the time of the death of the grantor that has not been accepted, the probate court cannot, under the English rule, determine whether the land in question is real estate or personal property until the time for the exercise of the option has expired. This is a serious handicap in the settlement of such estates.

Under our rule the status of the land is always known and there need be no waiting for the happening of future events. If the option is accepted before the owner of the land dies it is personalty, if accepted after his death it is real estate.

In this case both parties affirm the sale made and ask for their respective shares of the purchase money, so it must be held that as against any claim of either the grantees have a perfect title.

*By the Court.*—Order reversed, and cause remanded with directions to distribute the purchase money as real estate.