FRANCIS I. McCANNA, *Ex. et al. vs.* LILLÏAN J. HANAN
*et al.*

JUNE 14, 1928.

PRESENT: Sweetland, C. J., Stearns, Rathbun, Sweeney, and Barrows, JJ.

BARROWS, J. In 1904 a certain piece of real estate at Narragansett Pier, known as the "John K. Brown Homestead farm" as shown on a plat accompanying the deed, was conveyed to John H. Hanan and his wife, Edith E. Hanan, as joint tenants. In 1913 John H. Hanan released his interest to Edith. On September 4, 1915, John H. and Edith, describing themselves as lessors, leased at a yearly rental of $500 a "part of the John K. Brown Homestead farm," marked B on a plat accompanying the present bill, to the Point Judith Country Club for a period of ten years from November 1, 1915, with the privilege of purchase for $10,000 with warranty deed from lessors at any time prior to the expiration of the lease. Lessors covenanted to pay the taxes during the lease, gave a 50-foot right of way easterly across a portion of the farm marked C on the plat accompanying this bill to the Ocean Road and the use of parcel C for golf playing until November 1, 1916; also a 50-foot way over a portion marked A on the plat accompanying this bill and such right of way as lessors had thereupon westerly to the "Old Point Judith Road." On the plat accompanying the lease parcel B. was shaded and measurements of A and C were marked but the letters A, B, and C did not appear as on the plat accompanying this bill.

At the expiration of the lease, on October 31, 1925, the Country Club, pursuant to its option, elected to purchase parcel B.

To the north of the Brown farm was the Randolph farm, in 1915 and for some years prior thereto leased to the Country Club. Portions of the boundary walls remained between the farms. The clubhouse, and much of the golf course, was upon the Randolph farm. Parcel B after the lease was used as a part of the golf course, and parcel C has been similarly used by annual arrangement. Together they constituted four-fifths of the farm. A, B and C were not separated by physical boundaries and were taxed as a unit. Parcel A, though not leased, was used occasionally by the

golf club as a source of supply for sand. The right of way across A granted in the lease was used by golf players and vehicles in going from the course to the "Old Point Judith Road." It was mostly woodland. Parcels B and C were on higher ground and more open.

Mrs. Hanan in 1915 was about fifty years old, a legal resident of New York but born, and a frequent visitor, at the Pier. She executed her will in Providence, on July 30, 1918, and it with a codicil dated December 22, 1919, making changes not now important and otherwise confirming and ratifying the will "in all its provisions" was probated January 19, 1920, following Mrs. Hanan's death on January 11, 1920. The will was a lengthy and detailed document disposing specifically of personal jewelry and real estate, including homes in Newport and New York which she devised to her husband for life (paragraphs 26 and 27). Both Mr. and Mrs. Hanan had been married before. She had one child and he, two. Mrs. Hanan's son survived her only eighteen days. He left a son surviving. No children were born to testatrix and Mr. Hanan. To her husband Mrs. Hanan also willed a diamond tiara (paragraph 4), which he had given to her as a wedding present.

Paragraph fourteen of her will read "To my said husband, John H. Hanan, if he be living at the time of my death, I give and devise the farm known as 'The John Brown Farm,' adjoining the Country Club at Narragansett Pier, Rhode Island, to have and to hold the same to him and his heirs forever; but if he does not survive me, then this property is to become a part of my residuary estate, to be held by my trustees under this, my will." Later paragraphs provided that any gifts that might fail or lapse and the residue of her estate should pass to complainant trustees.

John H. Hanan survived his wife about six months, dying August 25, 1920, leaving a will by which any beneficial devise to him under said fourteenth paragraph passed to his sons. One of them and representatives of the other now claim the proceeds of the sale to the Country Club.

Complainants contend (1) that the devise in paragraph fourteen to John H. Hanan was of the A portion of the farm and that it did not include B and C; (2) that, if the court should hold paragraph fourteen to be a specific devise of the entire farm, portion B was equitably converted into personalty by exercise of the option to buy in 1925, that such conversion related back to the lease in 1915, that testatrix had no beneficial interest to devise and that the $10,000 purchase price belongs to complainants.

Intention of the testatrix, the controlling factor in construing her will, we seek primarily by examination of the will itself and the property upon which it was to operate. Facts known to the testatrix at the time of the execution of the will were offered in evidence. Complainants' argument is that intention to devise parcel A only to John H. Hanan appears from the use of the words "adjoining the Country Club." They claim that it is common usage for a person to speak of his farm when he means only a portion of it and that the only portion of the John Brown farm which adjoins the Club is parcel A because parcels B and C, being a part of, could not adjoin the Club.

We think testatrix did not use her language with the subtle distinction urged by complainants. Except for the phrase in question intention to apportion the farm nowhere appears. It could have been expressed simply and naturally by devising parcel A by a description readily obtainable from the lease. Perhaps the word "adjoining" was not a felicitous one but it is to be noted that the devisee with testatrix originally owned the whole farm as a joint tenant and even after Edith alone had title joined with her as a joint lessor to the Club binding himself as well as Edith by all the lessors' covenants; that a devise to Mr. Hanan of portion A, small in area and of doubtful value, would be a somewhat peculiar and unnatural disposition of it; that Mrs. Hanan was not shown to have been a golf player or frequenter of the golf links or interested particularly in the Club as a whole; that the activities of the Club with which

Mrs. Hanan was most familiar were social and took place at the clubhouse on the Randolph farm; that in the testimony even those who knew most about the Club's affairs often referred to the portions on the Randolph farm and the John Brown farm. In construing Mrs. Hanan's devise of her "farm known as the John Brown farm," we think that no one familiar with Mrs. Hanan's land would know as the John Brown farm the small wooded portion of the farm, unless compelled to do so more definitely than by the use of the words "adjoining the Country Club." These words were not intended to create a line of demarcation by which to separate a portion of the farm devised to her husband from the portions leased to or used by the Country Club. They were general terms of identification of the property devised. When the will was signed testatrix knew of the option but did not know whether the Club ever would take advantage of it. To Mrs. Hanan parcels A, B, and C were simply parts of her single farm known as the John Brown farm. There is no evidence that she ever thought of or referred to a portion of her land as the Country Club as distinguished from the farm. We do not think that the words "adjoining the Country Club" limit the devise to parcel A. Paragraph fourteen devised the entire John Brown farm to John H. Hanan. Whether or not beneficially, we shall next consider.

Even if paragraph fourteen devised the entire farm, complainants urge that the option in the lease when availed of in 1925 created an equitable conversion of the portion marked B as of the date of the lease 1915, and that a devise of B could carry the legal but not the equitable interest to John H. Hanan. 13 C. J. 856, n. 39. Complainants rely upon *Newport Water Works* v. *Sisson*, 18 R. I. 411 (1893) which differed from the case at bar in that the option there was given *after* the making of the will. That case was a bill for specific performance brought by the vendee. Counsel appeared only for complainant. As shown by examination of the original papers S, on March 21, 1892, made a contract

giving an option to N to purchase a certain parcel of land and died in June, 1892. He had signed a will December 16, 1887, specifically devising said parcel of land to his son for life and after his death to his grandchildren. The residue of the estate was left equally to the son and testator's wife. The court ordered the devisee and his children to execute the conveyance and said that the proceeds of the sale should go to the residuary legatees. The case established our law, that an option could be availed of and the contract enforced after vendor's death. The court said: "The contract evidences the fact that the testator intended, if the complainant (optionee) should so choose, to dispose of his land and to receive the purchase money. He must, therefore, equally have intended that his will should not operate upon the land, with its remainder in fee to these grandchildren, but upon the purchase money only, as a part of his residuary estate." The last sentence quoted assumed that if an equitable conversion were conceded it must follow that a devisee took no beneficial interest, because the conversion occurred as of the date of making the contract and thereafter being personal property testator could not intend to devise it as real estate. We do not think it necessarily follows in case of a devise of land subject to an unexercised option, that testator intended to have the devisee take neither the beneficial interest in the land nor its proceeds.

The question of testator's intent in a will case is affected, even though the will speaks as of the testator's death, by consideration of facts known to the testator when writing the will. *Moran* v. *Cornell*, 49 R. I. 308. In ascertaining a testator's intention as to disposition of the purchase price on specifically devised land subject to an option the fact that the giving of the option precedes execution of the will is generally recognized as of great importance in determining whether a testator intended to pass "all the interest he himself had therein including the right to the purchase price." 9 A. & E. Ann. Cases, 34. Theobald on Wills, 7th ed. p. 165. Jarman on Wills, Vol. 1, 6th ed. p. 80,

*p. 55. The *Newport* case relied properly upon *Farrar* v. *Winterton*, 5 Beav. 1 (1842), where the option was given *after* the execution of the will. It also cited as authority *Kerr* v. *Day*, 14 Pa. St. 112 (1850), based upon *Lawes* v. *Bennett*, 1 Cox C. C. 167 (1785). In both of the latter the option was given *before* the will was executed. When the option is given after making the will, intention to adeem is readily inferable. 13 C. J. 856, n. 42. The *Newport* case made no distinction between options given before and after the signing of the will. The distinction is important when seeking to find out what testator meant in using certain language. The statutory provision that a will speaks as of testator's death does not render the distinction useless. Our question in construing this will is not so much what kind of property this is as what did testatrix intend to do with it. *Lawes* v. *Bennett* in England is regarded as anomalous. It has often been questioned but never overruled, 50 A. L. R. 1322, at 1325 and 1327. In this country the courts have declined to follow its views on equitable conversion in *Rockland-Rockport Lime Co.* v. *Leary*, 203 N. Y. 469 (intestacy), *Smith* v. *Loewenstein*, 50 Ohio St. 346, *Adams* v. *Peabody Coal Co.*, 230 Ill. 469, and when the question concerned the destination of proceeds of a specific devise made after an option contract, the beneficial interest was given to the specific devisee in *Wright* v. *Minshall*, 72 Ill. 584 (1874), and *Woods* v. *Moore*, 4 Sandf., N. Y. Superior Ct. 579 (1851), and *Frick* v. *Frick*, 33 Atl. 462 Md. (1895). In the *Lawes* case the will was made after the option contract but Lord Kenyon said that the will furnished no light on testator's intention because it gave "in very general terms" all of testator's real estate to D and his personal estate equally to B and D. The only question was whether the real estate subject to the option should pass as realty or personalty and the court concluded that it must be considered personalty. Lord Kenyon used the expression "when the party who has the power of making the election has elected the whole is to be referred back to the agree-

ment," but as later English cases have pointed out this did not say that from the date of the giving of the option a conversion existed which prevented a specific devisee from taking the real estate or its proceeds. When this court said in *Newport Water Works* v. *Sisson*, "When the title is given it relates back to the date of the contract," it was not considering testator's intention when making the specific devise. It was considering the positions of vendor and vendee.

The case of *Lawes* v. *Bennett* in England has been strictly limited to cases with indistinguishable facts. *Collinwood* v. *Row*, 3 Jurist (N. S.) 785 (1857); *Townley* v. *Bedwell*, 14 Ves. 591 (1808); *Weeding* v. *Weeding*, 1 J. & H. 424 (1861); Cf. *In Re Isaacs*, L. R. 1894, 3 Ch. Div. 506 (intestacy); *Re Blake*, L. R. 1917, 1 Ch. 18; Lewin on Trusts, 12th ed. p. 1228; Jarman on Wills, 6th ed. Vol. 1, p. 80, *p. 55. Where the will has contained a specific devise of the land and where the option was given before the devise, the testator's intention that the devisee should take beneficially has been found in *Drant* v. *Vause*, 1 Y. & Coll. 580 (1842); *Emuss* v. *Smith*, 2 DeG. & S. 722 (1848). In *Pyle* v. *Pyle* (1895), 1 Ch. 724, the court says that the testator may on the face of the will indicate an intention to exclude the operation of the rule in the *Lawes* case and it approves the view that "when you find that, in a will made after a contract giving an option of purchase, the testator knowing of the existence of the contract devises the specific property which is the subject of the contract without referring in any way to the contract he has entered into, there is considered that there is sufficient indication of an intention to pass that property to give to the devisee all the interest, whatever it may be, that the testator had in it." In *Duffield* v. *McMasters* (1896), Irish Rep. 1 Ch. 370, the court lays down the proposition "that the owner of an estate subject to an option to purchase may deal with it in any way he likes and treat it either as real or personal estate," and that the *Lawes* case "should be limited to cases where there was no specific

disposition of the property made after the date of the contract giving the option of purchase." In that case, as in the case at bar, the blending in one specific devise of the portion alleged to have been converted and other real estate was an indication of the testator's intent to have the devisee take the proceeds. In *Re Marlay* (1915), 2 Ch. L. R. 264, while all the judges were agreed that where a lease contains an option to the lessees to purchase the demised property for an agreed sum and the option is not exercised until after the death of the lessor, the effect as a general proposition is that, as between the real and personal estate of the lessor, the purchase money goes as personal estate and not as real estate, yet said that careful examination of the *Lawes* case indicated that Lord Kenyon did not hold that upon the exercise of the option conversion took place as of the date of the lease. The judges agree that the true view as to the time of conversion was stated in *Re Isaacs* (1894) (intestacy), 3 Ch. 506, "that the property was converted not from the date of the contract but from the date of the exercise of the option." Cf. *Bristol* v. *Bristol Water Wks.*, 25 R. I. 189, at 199. In the present case equitable conversion is conceded. When it occurred we need not decide, for even though it related back to 1915, this does not close the investigation as to testatrix's intentions in writing paragraph fourteen. Cf. *Connell* v. *Savings Bank of Newport*, 47 R. I. 60. When testatrix specifically disposed of this land she did not know it ever would be turned into money. We see no reason to assume because Mrs. Hanan intended to convey, if the Club demanded it, that she also intended that her husband, to whom she specifically devised the land when she had no reason to treat it other than as land, should take only the naked legal title. To make Mrs. Hanan's intention in 1920 depend on the uncontrolled action of the Club in 1925, in the face of a particularly expressed devise of the farm to her husband, seems to us to make an artificial doctrine based upon presumed intention the criterion of testatrix's actual intention, and to conclude that she inserted into her care-

fully drawn will a purposeless and useless fourteenth paragraph.

Irrespective of when the conversion be considered to have taken place, the specific devise of the whole farm after the option was given, which option was not exercised until after testatrix's death, with the other facts in evidence, indicate testatrix's intention to pass to her husband whatever rights, legal or equitable, she had in the John K. Brown farm.

We therefore hold that John H. Hanan took the beneficial interest as well as the legal fee in the entire John K. Brown Homestead farm under the fourteenth paragraph of the will and that the purchase price therefor paid by the Country Club exercising its option in 1925 belongs to those claiming under the will of John H. Hanan and not to complainants as trustees of Mrs. Hanan's residuary estate. Nothing in General Laws, Ch. 298, Section 1, prevents paragraph fourteen from operating in favor of John H. Hanan. Said section does not limit what testatrix may do with property over which she has a right of disposition by will. The farm though subject to the option could be specifically devised. *Atwood* v. *Weems*, 99 U. S. 183; *Newport Water Works* v. *Sisson, supra.*

A form of decree may be presented in accordance with this opinion on June 19, 1928.

*Lee & McCanna, Henshaw, Lindemuth & Baker, Francis I. McCanna, John W. Baker, James L. Taft*, for complainants.

*Fitzgerald & Higgins, William H. Camfield*, for respondents.