JOHN ROBERT EDDINGTON,

Complainant Below, Appellant,

*vs.*

SALLIE B. TURNER, ARTHUR D. TURNER, and THOMAS H. TURNER, as individuals, and ARTHUR D. TURNER and THOMAS H. TURNER, as Executors of the Estate of Thomas W. Turner, Deceased,

Defendant Below, Appellees.

*Supreme Court, On Appeal, May 17, 1944.*

LAYTON, C. J., and RICHARDS, RODNEY, SPEAKMAN, and TERRY, JJ., sitting.

*Isaac D. Short, 2d,* and *Daniel J. Layton, Jr.,* for appellants.

*James B. Carey* and *James M. Tunnell, Jr.,* for appellee.

RODNEY, Judge, delivering the opinion of the court:

The foregoing facts give rise to three questions so intimately blended together that it is difficult to keep them separate, for in some particulars they impinge closely on each other, and yet contain elements of dissimilarity. These questions are:

(1) Does the granting of the option to purchase, made after the execution of the will and the subsequent exercise of the option after the death of the optionor, operate as an equitable conversion of the property relating back to the date of the option, so that the proceeds of sale would pass

to the personal representatives rather than to the specific devisee of the land?

(2) Did the granting of the option to purchase, followed by its exercise after the death of the optionor operate as an implied revocation of that portion of the will dealing with that real estate?

(3) Did the granting of the option, followed by its exercise after the death of the optionor, operate as an ademption of the devise to Sallie B. Turner for life?

These questions must be considered in their order.

Equitable conversion is, of course, a well established principle of equity, arising from consideration of a will or contract. While there is some authority holding that equitable conversion by contract, as distinguished from that arising by will, depends upon the operation of law regardless of the intent of the parties, yet the prevailing view is that it includes a legal fiction based upon the presumed intent of the parties, and embodying the equitable maxim that equity considers that to have been done which should have been done. By the application of the doctrine and upon the entering into a mutually obligatory contract the nature of the property is considered as having been changed. Equity thereafter considers the vendor as holding the land subject to the call of the vendee, and as security for the payment of the purchase price, and considers the vendee as holding the purchase price for the vendor. Either can require the other to specifically perform the contract, and by the doctrine the parties upon the entering upon the contract are deemed to be entitled to that which he will receive when the contract is carried out. The matter has chief application in determining the interests of persons claiming under the vendor or vendee.

Any difficulties surrounding the application of equitable conversion are increased when considered with relation to

a mere option to purchase, as contrasted with a mutually binding contract of sale, and these difficulties are again intensified when the option is not exercised until after the death of the person giving the option.

Most of the facts indicated were present in the case of *Lawes v. Bennett, Ch.,* 1 *Cox* 167, 29 *Eng. Reprint* 1111, from which case stems all thought that where the option is exercised after the death of the optionor the equitable conversion relates in some way back to the date of the option, and not to the date of its exercise, and consequently the proceeds of sale are treated as personalty, passing to the personal representatives rather than to the specific devisees of the real estate itself. In that case, decided in 1785, there had been a lease for seven years, with option to purchase during the last four years of the lease. The owner then made his will leaving his real estate to J, and his personal estate to J & M. The owner having died, the optionee during the term of the option exercised his right to purchase the property, and the question was whether the purchase money should be considered as part of real or personal estate of the testator. Sir Lloyd Kenyon, Master of the Rolls, said:

"When the party who has the power of making the election has elected, the whole is to be referred back to the original agreement, and the only difference is that the real estate is converted into personal at a future period."

The proceeds of sale were considered as personal property.

Few, if any, English decisions have been as consistently criticized, limited and explained as *Lawes v. Bennett,* and yet all English courts have given it recognition and expressly refused to overrule it.

*Lawes v. Bennett* was considered in 1808, in *Townley v. Bedwell,* 14 *Ves. Jr.* 591, 33 *Eng. Reprint* 648. There Lord Eldon remarking that much could be urged against it, yet followed the decision. Lord Eldon had been the unsuccessful counsel in *Lawes v. Bennett. Lawes v. Bennett*

has been followed in *Collingswood v. Row,* 26 *L. J. Ch.* 649, 3 *Jur., N.S.,* 785, 5 *W.R.* 484; *Weeding v. Weeding,* 30 *L. J. Ch.* 680, 4 *L.T.* 616, 9 *W.R.* 431, 70 *Eng. Reprint* 812; *In re Isaacs,* [1894] 3 *Ch.* 506; *In re Marlay,* [1915] 2 *Ch.* 264; *In re Carrington,* [1932] 1 *Ch. Div.* 1, 79 *A. L. R.* 259.

*Lawes v. Bennett* has been limited, explained or not applied in *Drant v. Vause,* 62 *Eng. Reprint* 1026; *Emuss v. Smith,* 2 *DeG. & S.* 722, 64 *Eng. Reprint* 323; *Adams v. Kensington Vestry,* 27 *Ch. Div.* 394; *In re Pyle,* [1896] 1 *Ch.* 724. In *Edwards v. West, L.R.* 7 *Ch. Div.* 858, the court while recognizing the rule of *Lawes v. Bennett* as to questions arising between heirs at law and personal representatives of the optionor, refused to apply the rule of conversion between optionor and optionee where the option is sought to be exercised within its term but after a fire had destroyed the buildings, and the optionee claimed the value of the insurance money.

Many authorities, English and American, have assumed in general terms that Lord Kenyon in *Lawes v. Bennett* decided that upon the exercise of the option, after the death of the optionor, that the equitable conversion of the property took effect from the date of the option, and not from the date of its exercise. This clearly could not be reconciled with the obvious holding that the heir or devisee is entitled to the rents and profits of the real estate after the death of the optionor and testator, and before the exercise of the option. All of the cases now hold that the property is converted from the date of the exercise of the option, and not from the date of the agreement by which such option was given. *In re Isaacs, supra; In re Marly, supra; In re Carrington, supra.* Since the equitable conversion dates from the exercise of the option, no case has made it quite clear just what it is that "relates back" so as to change the nature of the property as of the prior date and yet leave with the heir or devisee all the incidents of the property arising after the death of the testator. Lord Hanworth in *Re Carrington* said:

"It is plain then that the doctrine is that conversion does not take place at the date of the contract but at the date when the condition is fulfilled which makes the contract effective. Then the interest shifts on the happening of that fulfillment."

Neither the ownership of the rents after the testator's death nor other incidents of the property have shifted back, and yet the very nature of the property is considered as changed as of the prior date. Justice Romer in the cited case said:

"* * * conversion obviously takes effect from the exercise of the option only * * *. But why the exercise of the option should have the effect of taking away the real estate from the person to whom it has been devised and giving it to the person who has the personal estate is what I have never been able to understand. But there it is * * *."

When it is the optionee who has died before exercising the option, and not the optionor, as we have been considering, the interest of such optionee does not relate back and become real estate, but passes as personal property. It is so held even in those jurisdictions holding that the interest of one giving the option, where he dies before it is exercised, also descends as personal property. 19 *Am. Jur.* 17; *L. R. A.* 1917*D*, 721.

The English doctrine of *Lawes v. Bennett* has, with a few exceptions, found no support in the American cases. It was followed in *Newport Waterworks v. Sisson*, 18 *R.I.* 411, 28 *A.* 336. There in a case where the option to purchase followed the making of a will, the court drew no distinction as to the relative dates and upon the exercise of the option after the death of the optionor applied the doctrine of *Lawes v. Bennett*, as adopted by *Kerr v. Day*, 14 *Pa.* 112, 53 *Am. Dec.* 526. In the later Rhode Island case of *McCanna v. Hanan*, 49 R.I. 349, 353, 142 A. 609, 611, where a will followed the granting of the option, the court did not follow *Lawes v. Bennett*, which it is said "is regarded as anomalous" and "strictly limited to cases with indistinguishable facts."

The case of *Lawes v. Bennett* was followed in Pennsyl-

vania in 1850 by *Kerr v. Day, supra,* and some support may be found in *Keep v. Miller,* 1886, 42 *N. J. Eq.* 100, 6 *A.* 495.

The principle of *Lawes v. Bennett* has been expressly repudiated in *Smith v. Loewenstein,* 1893, 50 *Ohio St.* 346, 34 *N.E.* 159; *Sheehy v. Scott,* 1905, 128 *Iowa* 551, 104 *N.W.* 1139, 48 *L. R. A. (N.S.)* 365; *Ingraham v. Chandler,* 1917, 179 *Iowa* 304, 161 *N.W.* 434, *L. R. A.* 1917*D,* 713; *Adams v. Peabody Coal Co.,* 1907, 230 *Ill.* 469, 82 *N.E.* 645; *Rockland-Rockport Line Co. v. Leary,* 1911, 203 *N.Y.* 469, 97 *N.E.* 43, *L. R. A.* 1916*F,* 352, *Ann. Cas.* 1913*B,* 62; *In re Bisbee's Estate,* 1922, 177 *Wis.* 77, 187 *N.W.* 653; *Lynch v. Burger,* 1943, 22 *Tenn. App.* 120, 168 *S.W.* 2d 487.

Just as the English cases follow *Lawes v. Bennett* with reluctance, and the great weight of American cases repudiate the doctrine, so all the legal writers, English and American, criticize it freely and frankly. Sweet, in "Options of purchase contained in leases", 55 *Sol. J.* 360, calls it "a blot on the law relating to constructive conversion," and *Hanbury,* in *Modern Equity,* 362, speaks of the "muddy backwater of Equity, known as the rule in *Lawes v. Bennett.*" *Langdell* in a *Brief Survey of Equity Jurisdiction,* (2d *Ed.* 1908), says that the principle of equitable conversion has been "unwarrantably extended" by the cases following *Lawes v. Bennett. Simpson in Equitable Conversion,* 44 *Yale Law Journal* 559, 564, states that where the option "is not exercised until after the death of the optionor there is, in the United States, no conversion, although the English decisions regarding this point are, erroneously, to the contrary." *Stone on Equitable Conversion by Contract,* 13 *Col. L. Rev.* 369, 377, in speaking of *Lawes v. Bennett* says "it is believed no other case will be found in the books where courts have made use of a legal fiction for the purpose of divesting rights deemed to have been honestly acquired." Stone doubted that equitable conversion applied at all in such matters, but that if it did then the conversion took place at the exercise of the option, and after the vendor's heir became entitled, and that he, and not the

personal representatives, would be entitled to the proceeds.

See also *James on Option Contracts, Sec.* 517; 26 *Yale L. Journal* 783; 17 *Col. L. Rev.* 430; 78 *U. of P. L. Rev.* 791; 24 *Ky. L. Journal* 92; 24 *Law Q. Rev.* 403; 48 Law *Q. Rev.* 458; 55 *Sol. Journal* 360.

The theory of the relation back of the equitable conversion as held in *Lawes v. Bennett,* does not appeal to us as either embodying the intent of the testator or embodying any sound principle of law or equity. In the present case the testator evidenced his desire that his sister should have a portion of the land for life. He then granted an option for the limited period of sixty days. He could not tell whether the option would or would not be exercised. He knew, of course, if it should be exercised and he made the conveyance, that there would then be nothing left as a basis for the devise. He knew equally that if the option was not exercised he would continue as the owner of the land as if the option had never been given. He had no enforceable right to the purchase money, or control over the exercise of the option. He simply held the land under the obligation to convey if the optionee should so require. He then died. The devisee received by the will the land subject to the same obligation imposed upon it by the testator. The devisee received for her own use the rents and profits, and if the option was not exercised, would continue to do so for life. The devisee has taken the land under the will and held it under precisely the same terms and obligations as the testator, and continued so to hold it until the contingency happened which required her to make a deed for the property—viz., the exercise of the option. If there be any equitable conversion at all it could not occur prior to the exercise of the option, for until then no duty rested on anyone in connection with the land. There having been no conversion of the land during the testator's life, he had no claim for the purchase price transmissible to his personal representatives. To us it seems that the devisee took the land subject to the obligation to convey it upon the exercise of the option.

The land is at that point converted into money, and as she had the life interest in the land with its rents and profits prior to conversion, so she should have the life interest in the proceeds of the land.

We shall now briefly consider the question as to whether the granting of the option after the date of the will and the subsequent exercise of the option after the death of the optionor operated either as an implied revocation of the life estate given in the will, or as an ademption of the estate given thereby. The matters will be considered together, for if there be valid distinction between them the line of demarcation is quite shadowy. When a devise in a will is affected by a subsequent alienation of the subject matter the effect results not so much upon the theory that the revocation was intended, but rather for the reason that nothing remains upon which the devise can operate, and thus the specific devise has failed. The disposition of the property prevents the effectiveness of the devise, regardless of intention. *Wolcott v. Shaw*, 21 *Del. Ch.* 1, 2 *A.* 2d 913.

In the present case there was no absolute conveyance of the property mentioned in the will, but a mere option which might or might not be exercised. There was no exercise of the option during the life of the testator. At his death his will became effective subject to the performance of legal or equitable obligations created by him.

The appellant contends that the granting by the testator of the option to purchase operated as such a change in the testator's estate as to constitute an implied revocation of the devise. For this they cite *Duffel's Lessee v. Burton*, 4 *Har.* 290, 294, and 4 *Kent's Commentaries* 528. The cited case was decided in 1845.

The rule that alienation of realty operated as a *pro tanto* revocation of a preceding will disposing of that realty and the analogous rule that any substantial change in the nature of the estate operated as such revocation, were special applications of the common law that after acquired

realty could not be devised. 1 *Page on Wills, Sec.* 500. This rule in turn represented the common law and feudal favoritism of the heir at law, and the limitation placed on testators in the disposition of property. These rules and their reason are fully set out in the *Duffel* case. Indeed, the very example given there by Harrington J., shows this clearly. He says:

"If any one of you should by will, devise all your land to another person than your heir at law, and should purchase another farm the day after you made your will and die without any republication of it, that farm would not go to the devisee, but to the heir at law."

Seven years after the *Duffel* case the *Revised Code of* 1852, by *Sec.* 25 *of Chapter* 84, provided:

"Any estate, right, or interest, in lands acquired by a testator after the making of his will shall pass thereby in manner as if possessed at the making of the will, if such shall clearly and manifestly appear by the will to have been the intention of the testator."

This statute was changed Feb. 6, 1889 (*Chap.* 671, *Vol.* 18, *Laws of Delaware*), as to the intention of the testator, so as to read:

"Any estate, right, or interest, in lands acquired by a testator after the making of his will shall pass thereby in manner as if possessed at the making of the will, unless a contrary intention appear by the will." and in this form the statute now remains as *Section* 3708, *Revised Code of* 1935.

The effect of these statutes was considered in *Re Sutton's Estate*, 11 *Del. Ch.* 460, 465, 97 *A.* 624, and *Sussex Trust Co. v. Polite*, 12 *Del. Ch.* 64, 106 *A.* 54.

With the statutory right to devise after acquired property and the making of the will speak as of the death of the testator much of the rule providing that a conveyance of property operated as a technical revocation of a preceding devise, ceased to exist. There could be no absolute revocation by reason of a conveyance if a reacquisition of the property by a testator was a re-establishment of the devise. Of course if the testator did not reacquire the property the devise was lost, but this was not so much by a technical

revocation, but because there was nothing on which the devise could operate, it having been lost by ademption by extinction.

The rule applied in the *Duffel* case was said therein to be a "purely technical principle of law. * * * [which] has even brought upon the law the reflection of injustice and unreasonableness. * * * which * * * we shall be careful not to extend it any further, nor apply it to any case not falling directly within the spirit of adjudged cases."

We have been referred to no case where a mere option to purchase real estate not exercised until after the death of the optionor, and the vesting of the estate in a devisee operated either as an implied revocation of such devise or an ademption thereof, so that the purchase money would pass to the personal representative and not to the devisee. The nearest case is *Re Carrington,* [1932] 1 *Ch. Div.* 1, 79 *A. L. R.* 259, heretofore cited. There, as we have seen, the court felt compelled to apply the equitable conversion theory of *Lawes v. Bennett,* and to hold that a bequest of corporate shares had been adeemed. *Hanbury* in *Modern Equity, p.* 364, and in 49 *L. Q. R.* 173, criticizes this view and shows that *Lawes v. Bennett* never considered the principle of ademption at all.

At the time of the testator's death the life estate became effective. There was at that time neither a revocation nor ademption. It was not then ascertained, nor could it be made certain that the life estate granted to Sallie B. Turner would not continue for her life. Neither the revocation of Turner's will nor the ademption of any devise therein can be a matter at the sole election of a third party, to be determined after the will has become effective. This is so for the reasons that both revocation and ademption must be consummated within the testator's lifetime, and must be brought into being by the act of the testator, and not that of a stranger.

The decree of the Chancellor is affirmed.