## Richmond

JANE LYLES BAUSERMAN; TERRY GINGELL;
MARY GINGELL WALKER; THOMAS GINGELL AND
JANE GINGELL, MINORS; DONALD D. DiGIULIAN;
MARIE ANN DiGIULIAN AND CHARLES JOSEPH DiGIULIAN,
MINORS

v.

JOHN P. DiGIULIAN AND WILLIAM C. BAUKNIGHT,
CO-EXECUTORS OF THE ESTATE OF INEZ A. DiGIULIAN,
DECEASED; JOHN P. DiGIULIAN; THOMAS M. DiGIULIAN;
CARLA DiGIULIAN AND ANNE D. BUTLER

December 3, 1982.

Record No. 800712.

Present: All the Justices.

*Thomas A. Bovard; Guy O. Farley, Jr. (Farley and Harrington, Ltd.,* on briefs), for appellants.
*Jonathan S. Lynn (Thomas G. Martin,* on brief), for appellees.

POFF, J., delivered the opinion of the Court.

The issue framed on this appeal is whether an executory land sales contract, conditioned upon the happening of an uncertain event, adeemed by extinction a specific devise of the property.

John P. DiGiulian and William C. Bauknight, executors of the estate of Inez A. DiGiulian, deceased, filed a petition for construction of Inez's will. Appellants, respondents below, are the named

beneficiaries of a specific devise of the subject property (hereinafter, the devisees). Appellees are the named beneficiaries of the residuary clause of the will (hereinafter, the residuary legatees) and the executors of the estate.

The record on appeal consists of the pleadings, the exhibits, a memorandum opinion, the final decree, and a statement of facts. Some of those facts are not material to adjudication of the question of law,[1] and in order to simplify analysis, we will condense and paraphrase the statement stipulated by the parties.

By will executed March 10, 1966, Inez devised a fractional fee simple interest in two parcels of land to the devisees and bequeathed her personal property to the residuary legatees. On July 8, 1977, Inez entered into two conditional contracts to convey the land to strangers for a total price of $590,820. The relevant provisions of the two documents are essentially identical, and for purposes of this opinion, we treat them as a unit. The contract recites that the purchasers had paid $1,000 as a deposit which was to be credited against the purchase price if the sale was consummated. Paragraph (4) provides that "[t]his contract is subject and contingent upon the subject property being rezoned" but that "[t]he forfeiture provisions of paragraph (11) hereof shall apply regardless of the status of the rezoning." Paragraph (11) provides that, if the purchasers fail to make settlement on or before a fixed date, "the deposit . . . and prepaid real estate taxes shall be forfeited as liquidated damages to the Seller, and all parties released from further liability hereunder."

Inez died on November 16, 1977, and her will was admitted to probate. The property was rezoned on June 19, 1978. On December 15, 1978, the executors delivered deeds to the purchasers, and the purchasers paid the contract purchase price. A question arose whether the proceeds of sale should be distributed to the devisees or to the residuary legatees, and the executors sought the guidance of the court. The chancellor ruled in favor of the residuary legatees, and the devisees appealed.

■ To begin our analysis, we construe the provisions of the contract. The rights and duties of the seller and the purchasers were geared to the happening of an uncertain event. If rezoning occurred, Inez was obligated to sell upon demand. While, arguably,

---

[1] For example, because the parties treat the devise and bequest as direct testamentary dispositions, it is immaterial to our decision that the respective interests of the parties derive from testamentary trusts.

the purchasers had an implicit right to waive the rezoning condition and buy the property as zoned,[2] they were not obligated to do so and they did not do so. *Cf. Major* v. *Price,* 196 Va. 526, 84 S.E.2d 445 (1954). Even if the rezoning condition was satisfied, the purchasers had the right to choose whether to buy or to refuse to buy, subject to forfeiture as liquidated damages a sum less than one-half of one percent of the purchase price. Thus, the duty to sell and the duty to buy were not reciprocal obligations, and we construe the contract as a contract of sale upon the purchasers' option. *Cf. Wood* v. *Wood,* 216 Va. 922, 224 S.E.2d 159 (1976) (contract to convey with a condition precedent).

If the purchasers had exercised their option before Inez's death, the prior devise would have been adeemed by extinction. *Collup* v. *Smith,* 89 Va. 258, 15 S.E. 584 (1892) (delivery of deed of gift during testator's lifetime revoked prior devise). *See generally* Note, *Ademption by Extinction: The Form and Substance Test,* 39 Va. L. Rev. 1085 (1953). In fact, the purchasers did not exercise their option until after her death. Nevertheless, the chancellor ruled that the devise "was adeemed by the sale of the property which was the subject thereto prior to [Inez's] death and that the proceeds of such sale passed to the [residuary legatees]." Necessarily inherent in that ruling was a holding· that the sale by the executors converted the realty into personalty; that the conversion was retroactive to the moment the contract was executed; and, hence, that the conversion "adeemed" the earlier devise.

In effect, the chancellor applied what may be loosely termed the doctrine of retroactive equitable conversion. That doctrine had its genesis in the early English case of *Lawes* v. *Bennett,* 1 Cox Ch. Cas. 167, 29 Eng. Rep. 1111 (1785). There, a landowner granted a stranger an option to purchase. Later, he executed his will devising the land to another. The testator died, his will was probated, the stranger exercised his option, and a dispute developed concerning distribution of the proceeds of sale. In a bill for an accounting, one of the legatees argued that exercise of the option related back to the date it was granted and had the effect of converting the realty into personalty at the testator's death. Upholding the legatee's claim, Lord Kenyon, Master of Rolls, held

---

[2] The contract was also made "contingent upon Purchasers being able to acquire" certain land adjoining the subject property. The purchasers were expressly authorized to "waive this contingency", but, with respect to waiver of the rezoning condition, the contract was silent.

that "when the party who has the power of making the election has elected, the whole is to be referred back to the original agreement, and the only difference is, that the real estate is converted into personal [sic] at a future period." *Id.* at 171, 29 Eng. Rep. at 1113-14.

While English courts, in reluctant deference to the eminence of Lord Kenyon, have generally applied or discreetly distinguished the rule in *Lawes* and a few courts in this country have done so, most have not. Based upon an exhaustive analysis of the relevant cases, the court in *Durepo* v. *May,* 73 R.I. 71, 54 A.2d 15 (1947), concluded:

> The great weight of American authority is against applying the rule of the *Lawes* case in the same or similar circumstances. The decided trend of the decisions in this country is that the exercise of an option to purchase real property after the death of the owner does not relate back to the time of the option agreement so as to affect, under the doctrine of equitable conversion, the rights of the owner's heirs or devisees.

*Id.* at 82, 54 A.2d at 21. *See also* Annotations, 172 A.L.R. 438 (1948); 79 A.L.R. 268 (1932); 50 A.L.R. 1314, 1322 (1927); 57 L.R.A. 643, 651 (1903).

It is important to understand the reasons for the conflict between the American and English views. The doctrine of equitable conversion, unknown to common law, is a creature of courts of chancery. Yet, as applied in controversies over distribution of a decedent's estate, the differences in the equitable doctrine stem from differences in rules of law. When *Lawes* was decided, English laws of inheritance, rooted in feudal property concepts, favored the heir at law, the eldest son, and English courts construing wills tended to limit the donor's power of testamentary disposition to others. *See Eddington* v. *Turner,* 27 Del. Ch. 411, 420-21, 38 A.2d 738, 742 (1944); *Ingraham* v. *Chandler,* 179 Iowa 304, 314, 161 N.W. 434, 437 (1917). In America, the law does not favor intestacy; rather it favors the right of a donor to dispose of his property at death as he chooses, even if at the expense of his heirs at law. *See, e.g., Owens* v. *Bank of Glade Spring,* 195 Va. 1138, 81 S.E.2d 565 (1954). When the testamentary intent of the donor is clear, the doctrine of equitable conversion will not be applied to defeat a testamentary gift of land. *Robinson* v. *Lee,* 205 Va. 363,

136 S.E.2d 860 (1964) (land granted by specific devise not equitably converted by conditional installment-sales contract).

■ One of the first American opinions repudiating the rule in *Lawes* is found in *Rockland-Rockport Lime Co.* v. *Leary,* 203 N.Y. 469, 97 N.E. 43 (1911). There, a lessee with an option to purchase attempted to exercise the option after the lessor's death. In a suit for specific performance, the lessee claimed that his election worked an equitable conversion retroactive to the date of the lease. Rejecting the claim, the court reasoned:

> The doctrine of equitable conversion rests on the presumed intention of the owner of the property and on the maxim that equity regards as done what ought to be done. . . . As [the lessor] intended no conversion unless the contingent event happened, he is presumed to have intended none until that event happened, for that would be the natural date to have it take effect in order to avoid confusion if not disaster. . . . The maxim underlying the doctrine of equitable conversion rests on a duty to do something, but in this case until the option was exercised there was no duty and it could not be known whether there ever would be a duty. . . . If the lessor had made the duty absolute instead of contingent, he could fairly be said to have intended that conversion *must* take place at some time, but as he made it contingent he could not have intended that result. . . . We hold that conversion was effected only from the date when conveyance became a duty and that it did not relate back to the date of the lease.

*Id.* at 480-82, 97 N.E. at 46-47.

Invoking a similar rationale, the Supreme Court of Wisconsin has held that equitable conversion does not occur on the date of an option contract because such a contract is not subject to specific performance on that date.

> [N]o conversion will be deemed to take place until there is a certainty that there will be a change of title. Equity regards that as done which is clearly intended to be done, or which is contracted to be done, but not that which only may be done.
> . . .
> . . . To relate the conversion back to the date of the option is to relate it back to a time when there was and could be no conversion . . . . Granted that conversion takes place at the

moment there is in existence a mutual right to enforce conveyance and compel acceptance of title, such moment, in the case of an option, does not occur until the option is exercised.

*Estate of Bisbee,* 177 Wis. 77, 80-81, 187 N.W. 653, 655 (1922). *See also In Re Estate of Jesseman,* 121 N.H. 313, 429 A.2d 1036 (1981).

We are persuaded that logic supports the majority American view, and we adopt that view as the rule in this Commonwealth. Applying the rule in this case, we hold that the devise was not adeemed, and, hence, that the right to the proceeds of the sale devolved upon the devisees.[3] We will reverse the decree, and because certain questions concerning one of the two parcels of land were not adjudicated in the court below, we will remand the cause for further proceedings consistent with this opinion.

*Reversed and remanded.*

---

[3] Code § 64.1-61 provides:

No conveyance or other act, subsequent to the execution of a will, shall, unless it be an act by which the will is revoked as aforesaid, prevent its operation with respect to such interest in the estate comprised in the will as the testator may have power to dispose of by will at the time of his death.

In light of our holding, we need not decide whether, as the devisees contend, the chancellor erred in ruling that this statute "was not intended to restrict the ademptive effect of land sale contracts executed subsequent to specific legacies."