## CIRCUIT COURT OF ALBEMARLE COUNTY

Julio A. Ortiz, Sr.,
and Petra Ortiz

v.

Annette Figuerora Ortiz

December 11, 1990

Case No. (Chancery) 7288-C

By JUDGE JAY T. SWETT

This [opinion] contains my decision on this suit for specific performance. Before giving my decision, a factual statement may be helpful.

The complainants, Julio A. Ortiz, Sr., and Petra Ortiz, are the parents of Julio A. Ortiz, Jr., who died on October 11, 1989. The respondent is the widow of the decedent. The suit for specific performance is brought by Mr. and Mrs. Ortiz, Sr., in their capacities as administrators of the estate of Julio A. Ortiz, Jr. Mr. and Mrs. Ortiz are also the sole heirs-at-law of the decedent.

The decedent and the respondent were married in 1982. By 1986, the decedent had developed a serious disease related primarily to severe alcohol and drug abuse. In 1987, decedent and respondent moved to Charlottesville, Virginia. They purchased a resident as tenants by the entirety (hereafter "the marital residence"). The decedent continued to abuse alcohol and drugs. His health continued to deteriorate to the point that the decedent was advised that further alcohol consumption would result in his death.

In the spring of 1989, respondent advised decedent that she would no longer continue to live with him if

he continued to abuse alcohol. She believed that the separation would sufficiently shock decedent so that he would stop drinking and seek treatment.

In conjunction with the separation, the parties signed a separation agreement on April 10, 1989 (hereinafter "the agreement"). The respondent was represented by counsel who drafted the agreement. The decedent did not have an attorney. The agreement was a comprehensive separation agreement in which the parties agreed to a disposition of all of their jointly held real and personal property. In addition to dividing their household furniture, personal effects, automobiles and the like, the parties agreed that the respondent would receive a VHDA bond valued at $93,000.00. A promissory note valued at $22,240.00 became the property of the decedent. The agreement provided for an equal division of other jointly held CD's and savings accounts.

When the agreement was executed, the parties owned three parcels of real estate. The three included the marital residence in Charlottesville which was estimated to have a fair market value of $110,000.00, a residence in North Miami Beach, Florida, with a fair market value of $85,000.00, and a lot in Lake Monticello subdivision in Fluvanna County valued at $21,000.00. At the time the separation agreement was signed, decedent was living in the marital residence. The decedent's parents were living in the North Miami Beach property. The respondent was living in a house which she apparently purchased either from her own funds or from the proceeds of the VHDA bond.

Under the agreement, respondent agreed "upon Husband's request and at Husband's expense, [to] transfer all of her right, title and interest . . ." in the marital residence to the decedent. Respondent agreed to convey the North Miami Beach property to the decedent under the same terms. The decedent agreed to convey his interest in the Lake Monticello lot to respondent. A number of other items were covered by the agreement but are not significant to resolve the issue presented here.

As previously indicated, decedent died on October 11, 1989, due to complications arising out of his alcohol abuse. Prior to his death, the decedent had requested that the respondent convey her interest in the North Miami Beach property to the complainants, the parents of the

decedent. The decedent had purchased the home for his parents, although title was in the decedent and respondent as husband and wife. Respondent complied with this request. In turn, prior to his death, respondent requested that the decedent convey his interest in the Lake Monticello lot to her. The decedent complied with this request. However, the decedent never requested that respondent convey her interest in the marital residence. The complainants, after qualifying as administrators of the decedent's estate, requested that the respondent convey title to the marital resident to them. The respondent declined to do so. This suit for specific performance seeks an order compelling the respondent to convey the marital residence in accordance with the terms of the agreement.

The respondent's refusal to convey the property rests on two primary grounds. The first is that the decedent breached a number of the provisions in the agreement, and therefore, the complainants are not entitled to the equitable remedy of specific performance. Respondent further claims that since decedent never requested a conveyance of the respondent's interest in the marital residence prior to his death, that the property became hers at his death since it was held as tenants by the entirety.

The principal argument advanced by the complainants for specific performance rests on the doctrine of equitable conversion. They argue the decedent acquired equitable title to the marital residence at the time of the execution of the April 10, 1989, agreement. The complainants rely principally on *Bauserman v. Diguilia*, 224 Va. 414 (1982); *Gulick v. Hawkins*, 214 Va. 116 (1973); and *Sale v. Swann*, 138 Va. 198 (1924). On the other hand, respondent argues that equitable conversion does not apply because the agreement contained a contingency which amounted to a condition precedent. More specifically, the agreement required respondent to convey her interest in the marital residence only upon the request of her husband, and since no request was made prior to his death, equitable conversion did not apply since her duty to convey never became absolute. Since there was no equitable conversion due to the conditional nature of the agreement, title to the property passed to her as the surviving spouse at her husband's death. The complainant also relies on *Bauserman, supra,*

as well as *Vasilion v. Vasilion*, 192 Va. 735 (1951); *Cushman v. Fitz-Hugh*, 199 Va. 234 (1957); and *Clay v. Landreth*, 187 Va. 1629 (1948).

A starting point should be whether general principles of equity prevent the court from granting the specific remedy requested, *i.e.*, specific performance. If general equitable principles would not support the granting of this relief, there is no reason to go any further since this is the only remedy requested by the complainants.

After reviewing the evidence and the applicable authorities, there are no obstacles to an award of specific performance if it is otherwise available. First, the agreement between the parties was a comprehensive settlement agreement in which the parties agreed to divide all of their marital property, real as well as personal. Respondent acquired complete interest in the parties' principal liquid asset, the VHDA bond worth $93,000.00. She also received a lot worth in excess of $20,000.00. The decedent acquired the parties' interest in their marital residence, the Florida property, and a promissory note. Had the marital residence been conveyed by the respondent to the decedent prior to his death, the contract would have been essentially performed just as the parties contemplated. Moreover, had the contract been fully performed, it appears to be an equitable and fair distribution of the marital property to both parties. In fact, it would almost be inequitable not to permit specific performance since under the agreement the respondent was giving up her half-interest in the marital residence, yet she now wants to retain not only her one-half interest that she agreed to convey, but the decedent's one-half interest as well. In any event, the court does not find that general equitable principles prevent an award of specific performance.

The complainants' principal theory of recovery is the doctrine of equitable conversion. They argue that the decedent acquired the respondent's equitable interest in the marital residence upon execution of the settlement agreement in April of 1989. It is true as a general principle that in an executory contract for real estate, the purchaser is clothed with an equitable interest in the land, and the seller is clothed with an equitable ownership in the purchase money. *Sale v. Swann*, 138 Va. 198, 208 (1924). However, that principle does not apply unless

the duty of the vendor to sell is absolute. Here, the respondent's duty to convey her interest in the marital residence was contingent upon being requested to do so by the decedent. The evidence is unrefuted that the decedent never requested that the respondent convey her interest in the marital residence before his death in October.

This conclusion is based upon the reasoning of the Virginia Supreme Court in *Bauserman v. Diguilia*, 224 Va. 414 (1982). In *Bauserman*, the testator, T, had a will in which she devised her real property to A and gave her residual estate to B. She then contracted to sell a parcel of real property to C on conditions that amounted to a purchase/option contract. She died before the option was exercised. The option was exercised after her death. The issue presented was who received the proceeds of the sale, the devisees under T's will who would have taken the property had it not been sold, or the residuary legatees who would have received the proceeds of the sale had it been conveyed prior to T's death. The legatees argued that they should take because at the time of execution of the contract, T conveyed her equitable interest in the property in exchange for an equitable interest in the proceeds relying upon the doctrine of equitable conversion. After a lengthy discussion of equitable conversion, the Court found that the principal issue was *when* did the duty arise on T to convey the property. When did T's duty become "absolute"? Finding that it did not become absolute until the exercise of the option, which occurred after T's death, the Court did not invoke the doctrine of equitable conversion (technically "retroactive" equitable conversion), and the proceeds of the sale went to the devisees, rather than the legatees.

Applying those principles here, since the decedent never requested conveyance of the marital residence prior to his death, there was no equitable conversation of the respondent's interest in the property. Her duty to convey her interest in the marital residence did not arise until there was a demand that she do so. The evidence is that the demand on the respondent to convey her interest in the marital residence did not come until after the decedent's death when the decedent's parents made such a demand in their capacity as executors of the estate.

The fact that equitable conversion is not applicable in this case does not mean that the complainants are not entitled to relief. The parties appear to agree that the terms of the separation agreement survive the death of the decedent, and any rights and duties of the decedent under the contract would inure to his estate. The court sees no reason why this is not the case. The question therefore is whether the complainants stand in the shoes of the decedent and, as they have done here, can they request respondent to comply with the terms of the separation agreement to convey her interest in the marital residence to the decedent's estate? The court does not see any reason why they should not be able to do so. Under the agreement the wife agreed to "transfer all her right, title and interest in the said property to Husband" at his request and at his expense. Such a request has been made. The complainants are prepared to pay the cost of the transfer. While it is true that the respondent's interest in the marital residence is arguably different now than at the time she entered into the contract, there does not appear to be a justifiable reason why she should still not be obligated to perform what she previously had agreed to do. In fact, an interest as a tenant by the entirety is considered to be an interest in the whole property shared with one's spouse. This is one of the unique features of holding property as tenants by the entirety. *Vasilion v. Vasilion*, 192 Va. 735 (1951); *Sundin v. Klein*, 221 Va. 232, 239 (1980).

The last issue to resolve is whether the complainants should be denied specific performance in view of contractual breaches by the decedent. More specifically, respondent contends that the decedent breached the provisions of the separation agreement in three aspects. The first is that the decedent did not assume responsibility for a $10,000.00 credit line deed of trust placed on the marital residence and to hold the respondent harmless from the consequences of that indebtedness. Second, respondent contends that the decedent did not assume responsibility for outstanding debts on a Florida time share unit. Third, the respondent contends decedent did not assume responsibility for the mortgage indebtedness on the North Miami Beach, Florida, property. Citing these contractual breaches by the decedent, the respondent argues that the decedent's

contractual breaches negate the availability of specific performance as a remedy citing *Griscom v. Childress,* 183 Va. 42 (1944).

The evidence was that the decedent did not refinance the credit line deed of trust and that the respondent had to pay $10,207.00 to satisfy this claim approximately a month before the decedent's death. However, the respondent never asked the decedent to reimburse her or to comply with the "hold harmless" provision. Nor has the respondent made a damage claim against the estate for this amount. As to the time share unit, under the agreement, respondent had agreed to convey her interest in this unit to the decedent. Before she did this, the loan was foreclosed. Their interest in the unit was conveyed to the lender in full satisfaction for the debt. Thus the respondent incurred no loss on the time share unit. With regard to the North Miami Beach property, this was conveyed to the decedent's parents who assumed the mortgage indebtedness. As with the time share unit, the respondent suffered no loss.

*Griscom, supra,* does not prevent specific performance under the facts of this case. First, *Griscom* involved a claim of specific performance of personalty as opposed to realty. Second, there were unique issues in *Griscom* involving a sheriff's sale and whether one or more parties were able to perform at the time of the auction sale. The court does not find *Griscom* to be applicable here.

While it is true that the respondent suffered a loss of $10,207.00, it is clear that she has a valid contractual claim for breach of contract against the decedent's estate to recover this amount. Given this available remedy, the court does not see why this should prevent an award of specific performance.

Accordingly, the court grants the relief requested by the complainants. Respondent is obligated to convey her interest in 1121 Cottonwood Road to the complainants in their capacity as administrators of the estate of the decedent.