NEWPORT WATER WORKS *vs.* ELBERT A. SISSON *et als.*

18  411
25  199
25  368

S. entered into a contract with the complainant for the sale of land whereby the latter had an optional right to purchase. Soon after making the contract, S. died, leaving a will in which he devised the land to his son E. for life, and upon his death, in fee to the children and issue of E. ; and after other gifts and devises, gave the residue of his estate equally to his widow and son. The complainant elected to purchase under the contract.

*Held*, that upon the complainant's election to purchase, there was an equitable conversion of the land embraced in the contract into personalty, and that the purchase money passed under the will to the residuary legatees.

*Held*, further, that the devisees of the land in question held the legal title thereto as trustees for the complainant, and may be required to convey the same to it.

BILL IN EQUITY for specific performance.

*Providence, November* 22, 1893.   STINESS, J.   This is a bill for the specific performance of a contract for the sale of land made by Edward Sisson, late of Portsmouth, deceased.

Shortly after making the contract Edward Sisson died, leaving a will in which he devised the land in question to his son Elbert A. Sisson for life, and upon his death, in fee to the children and issue of said Elbert. After other gifts and devises, he gave the residue of his estate equally to said Elbert and his widow, Mary G. Sisson. Elbert Sisson has two minor children living, who, with the widow and son named above, are respondents to the bill. The questions are whether there has been an equitable conversion into personalty of so much of the real estate thus devised as is embraced in the agreement, so as to pass the purchase money to the residuary legatees; and who are the parties to convey title. We think it is clear that there has been a conversion. The will speaks

from the death of the testator. At his death, he had sold the estate in question, and, although a deed had not been given, the vendee was the equitable owner, in case of an exercise of its option to purchase under the contract. When the title is given, it relates back to the date of the contract; the vendor and his heirs, or devisees, holding the legal title meanwhile, as trustees for the purchaser. This result rests upon the familar principle, that equity regards that as done which is agreed to be done; or, as stated in *King* v. *King*, 13 R. I. 501, "In equity, property will be treated as being already what it was intended to become." Siter's Appeal, 26 Pa. St. 178; *Houghwout* v. *Murphy*, 22 N. J. Eq. 531; *Hawley* v. *James*, 5 Paige, 318. See also Story, Eq. Juris. (12th ed.) §§ 789, 790, 1212; 1 Pom. Eq. Juris. (2d ed.) § 368, and cases cited.

The contract evidences the fact that the testator intended, if the complainant should so choose, to dispose of his land and to receive the purchase money. He must, therefore, equally have intended that his will should not operate upon the land, with its remainder in fee to these grandchildren, but upon the purchase money only, as a part of his residuary estate.

Thus, it is said in *Kerr* v. *Day*, 14 Pa. St. 112, "It is settled, that an estate under contract of sale is regarded as converted into personalty, from the time of the contract, notwithstanding an election to complete the purchase rests entirely with the purchaser; and if the seller die before the election be exercised, the purchase money, when paid, will go to his executors as assets."

To the same effect is *Farrar* v. *Winterton*, 5 Beav. 1, where a testatrix made a will, devised real estate and afterwards sold it, but the purchase was not completed until after her death. It was held that the purchase money belonged to the personal representatives, and not to the devisees of the testatrix, notwithstanding her lien on the estate for the purchase money, and notwithstanding a statute (1 Vict. c. 26, sec. 25) "that no conveyance or other act made or done subsequently to the execution of a will of or relating to any real

or personal estate therein comprised, except an act by which such will shall be revoked as aforesaid, shall prevent the operation of the will with respect to such estate or *interest* in such real or personal estate as the testator ˙shall have power to dispose of by will at the time of his death." The point of the decision is that she could not devise the real estate at the time of her death, because she was no longer the equitable owner thereof. But, in the case of a contract to sell land, the legal title remains in the vendor until the contract is executed. This title may descend to heirs or be devised, and if the vendor dies before the title passes, a bill for specific performance will lie against the heir or devisee. *Moore* v. *Burrows*, 34 Barb. 173; *Judd* v̇. *Moseley*, 30 Iowa, 423; *Watson* v. *Mahan*, 20 Ind. 223; *Newton* v. *Swazey*, 8 N. H. 9; 3 Pom. Eq. Juris. § 1261; 2 Warvelle on Vendors, p. 743.

In the present case, therefore, upon payment of the purchase money to the executors, the devisees under the fourth clause of the will may be required to convey the legal title to the complainant, and the money so received will pass to the residuary legatees under the sixth clause of the will.

A master may be appointed to make conveyance for the infant respondents.

*William P. Sheffield*, for complainant.