Belknap,
Dec. 6, 1927.

BERTRAM BLAISDELL, *Ex'r, v.* F. SUMNER COE *& a.*

*Gardner S. Hall* and *Burt R. Cooper* (*Mr. Cooper* orally), for F. Sumner Coe.

*Temple & Temple* (of Massachusetts) (*Mr. Winfield Temple* orally), for Eliza W. Harrington, a residuary legatee.

*Stanton Owen* (by brief and orally), for Bertram Blaisdell, trustee, a residuary legatee.

*William E. McKee* (of Massachusetts) and *Robert W. Upton* and *Winthrop Wadleigh*, for the First Church of Christ, Scientist, a residuary legatee.

*McLane & Davis* and *John P. Carleton*, for Addie Wallace, a residuary legatee.

ALLEN, J. Whatever the technical legal character of a real estate mortgage as being real or personal estate, its dominant feature is of security for the primary obligation. It is collateral thereto and dependent thereon. The discharge of the obligation discharges the mortgage, while the discharge of the mortgage does not discharge the obligation. The obligation and the mortgage do not represent separate and independent items of property, except so far as is necessary for their enforcement. The mortgage does not carry the obligation, but it is the obligation that is superior and the controlling element.

It carries the mortgage with it as incidental in lessening the chances of its non-performance.

These simple observations are stated as the general understanding of persons familiar with real estate transactions, as was the testatrix. And the meaning of common speech is to be determined by rules of common sense and ordinary understanding rather than by legal definitions and rules of law which have themselves become largely modified by equitable doctrines. There is no general rule that the literal meaning of language is even presumptively the actual meaning. When the law itself treats mortgages of real estate in most aspects as personalty, argument that a layman regards his real estate as including his mortgages on real estate becomes ineffective.

While notes secured by mortgage are often called mortgages, neither the notes nor the mortgages are ordinarily called or considered real estate. It is to be assumed in the absence of evidence to the contrary that the testatrix intended to have her will given the ordinary and usual meaning of its language. And it is to be assumed, whether or not a lawyer assisted her in drawing the will, that she understood the mortgage debts due her to be personal property and to have their situs in Laconia where she lived. The bequests of pecuniary legacies and the residuary clause disposed of her personal estate, and there is nothing to show that she intended her devise of real estate to Sumner to be inclusive of any property ordinarily regarded as personal estate.

It would be admittedly strange and foolish for the mortgage debts to go to the legatees of the personalty and for the mortgages to go separately to Sumner, and the claim is made that because the mortgages partake of the nature of real estate, they are included in the devise, and because of the inclusion, the mortgages carry the debts with them. The practical answer is that the debts carry the mortgages, and since they go together and the debts are personal estate, the mortgages are also to be treated as personalty. What is predominant includes what is subordinately related. Any technical overlapping between the debts as personalty and the mortgages as realty is to be reasonably resolved, and the will is to be construed practically. If A's will leaves B his notes and C his stocks, C does not receive the stocks which secure the notes given B.

The ordinary understanding of real estate transactions which the testatrix had determines any doubt as to what she intended adversely to the devisee's claim. Further support for this conclusion is given by extrinsic evidence. The bequest to Sumner of money equal to the

amount of the mortgage debt due from him at the date of the will has strong probative value to show that the mortgage was not intended to be included as a part of the real estate devised. If the testatrix had intended to give the bequest of money and also forgive the debt, it does not seem reasonable that she would think she had so provided by the devise of the real estate because a real estate mortgage secured the debt. Expression of such a purpose would naturally be shown by definite reference to the debt. And as between the residuary legatees who were sisters of the testatrix and Sumner who was her brother-in-law, her favor would naturally go to the former in the absence of opposing evidence.

The claim that the property in the two towns named had belonged to the deceased husband of the testatrix and that she wished it to go back to his family has no evidence of value in its support. It does not appear that any of the mortgaged property came from him or that she had such a motive in her gift to Sumner. Nor does the statute (P. L., c. 297, s. 6) providing that "Every devise of real estate shall . . . pass all the estate of the devisor therein, unless it shall appear that it was his intention to pass a less estate," affect the result. If applicable, it is met in the conclusion that there was no intention in the devise to Sumner to pass any estate in the mortgaged property.

As to the two mortgages given to secure payment for the real estate sold after the will was made, additional reason for their exclusion from the devise is found under the doctrine of ademption. While the rule now prevails that all rules for the construction of wills have been subordinated to the principle that the primary and controling purpose in their construction is to find out what the testator really meant in the language used and that such rules are of service only as they naturally and logically help in the ascertainment of the meaning of the language, and while the rule has been expressed here · in the enunciation that "former decisions upon the construction of wills are not to be given the force of binding authorities in a given case, unless the language of the will and circumstances are so far identical as not to admit of a reasonable distinction" (*Galloway* v. *Babb*, 77 N. H. 259, 260; *Remick* v. *Merrill*, 80 N. H. 225, 227), the principle of ademption is here pertinent without practical distinction from its application in similar cases, which are therefore to be given authority.

In its simple form covering cases where only a disposal of property in the testator's lifetime is shown (*Gardner* v. *Gardner*, 72 N. H. 257; *Drake* v. *True*, 72 N. H. 322), it has been extended to cases where the property has been exchanged for other property. "If the testatrix in

her lifetime had withdrawn the bank deposits and used or reinvested the fund there can be little doubt upon the authorities that the legacies would be by her action destroyed." *Morse* v. *Converse,* 80 N. H. 24, 25. It is also said in this case: "A legacy is adeemed by the destruction of the thing itself . . . or by such change in its character voluntarily made by the testator as indicates a change of testamentary purpose, an intentional partial revocation of the will."

The conveyance here of the real estate operated so that the testatrix did not own it at her decease in the ordinary sense of ownership, and the situation is the same as though payment in full had been made or as though the unpaid price had not been secured at all or had been otherwise secured. The change from outright ownership to security ownership was so radical in character and effect that the change of testamentary purpose, in the absence of language to the contrary, is adequately manifest. While a change in the form of what is given is not an ademption (*Ford* v. *Ford,* 23 N. H. 212), the change here was of nature and character. That the result is to leave the devisee real estate of slight value as compared with what the testatrix had when she made her will is not of importance, since it was her intention that he should not have what might be sold before her decease or its unpaid price as secured thereby. The debt due for the unpaid price not being given to him in either instance of sale, there was no legacy to him of the security therefor.

The situation presented was expressly left unconsidered in *Chase* v. *Moore,* 73 N. H. 553, a case in which special language of the will there considered indicated that ademption was intended. But in support of the result reached the following cases are cited: *McNaughton* v. *McNaughton,* 34 N. Y. 201; *Walker* v. *Waters,* 118 Md. 203; *Re Bernhard,* 134 Ia. 603; *In re Clowes,* [1893] 1 Ch. 214; *Hunter* v. *Mills,* 29 S. C. 72; *Skerrett* v. *Burd,* 1 Whart. 246; *Moor* v. *Raisbeck,* 12 Sim. 123; *Adams* v. *Winne,* 7 Paige 97. The case of *Clark* v. *Clark,* 56 N. H. 105, is readily to be distinguished. The will there gave "all my interest in the real estate of which I now' hold a mortgage," with a description of the property. Disposal of the mortgage and the debt it secured was held to be made. Since the real estate was definitely described and the testator's only interest in it when he made his will was as a mortgagee, any other conclusion would have defeated his clearly, although poorly, expressed purpose. And in *Bills* v. *Putnam,* 64 N. H. 554, the phraseology of the will there construed was such as to show that a change in character of the property devised was not to accomplish an ademption.

In enforcement of a grantor's and "devisor's right to use the language of the people in the sense in which they understand it" (*Smith* v. *Furbish*, 68 N. H. 123, 158), the will is therefore construed as not giving Sumner the mortgage debts, since in the ordinary meaning of language it gave him no property of that nature and there are no circumstances showing that an unusual meaning was intended. And since it did not give him the debts, it did not give him the mortgage security for their payment.

While there is more question about the Ruiter farm, the general considerations which lead to the exclusion of the mortgage held by the testatrix at the date of the will are the same in their application to this property. If the testatrix when she made her will had owned no other real estate within the terms of the devising clause, a different result might be reached, since the fact that it was the only property which could then meet the call of the clause would presumably make it the property intended. But as there was real estate owned in fee which answered the call, the inclusion of the Ruiter farm is not demonstrated.

That the interest of the testatrix in the farm was in certain aspects a real estate ownership is undecisive. From a layman's standpoint her title was the same as to the mortgages. In the sense of control and possession she did not own the farm. The purchaser had the equitable title the same as a mortgagor, and the legal title of the devisor was held only for security for what was due under the contract of sale. The purchaser by the terms of the contract was entitled to a deed, on giving a mortgage back, before the will was made. All the devisor had was a claim for the unpaid price secured by her legal title, and this claim was not real estate. And it does not appear that she had any other understanding about it. Property of which possession has been given under a sale and towards which substantial payment has been made is not ordinarily understood as owned by the seller, even when title is retained as security for the price. The memorandum on the contract made by the devisor indicates only that she regarded the farm as no more than security for its unpaid price. Although she correctly regarded it as security in the nature of real estate, that fact has no practical tendency to show that her devise of real estate was meant to include it. As with the mortgages, it was primarily and dominantly security for a debt, and as a business woman she so understood.

In *Brown* v. *Bartlett*, 58 N. H. 511, a devise of several tracts of real estate was held to include the proceeds received after the devisor's

death of a tract coming within the general description and of which the devisor before the will was made had given a bond for a deed in a sale of it. The question was called "very doubtful," and the only reference in the opinion to the extrinsic evidence is that it was not necessary to state it. The case can therefore be of no authority.

The contention that the devise covers the mortgages with the debts they secure and the real estate sold with the unpaid part of the price, because of the devisor's technical legal title, is no more to be upheld than a treatment of mortgages and such real estate in an intestate estate as property going direct to the heirs rather than to the administrator, in a construction of the legislation providing a different scheme of intestate administration and devolution as between realty and personalty.

The conclusion is that a devise of such real estate as one may own at his death does not embrace real estate held as security for debts in the absence of evidence showing a contrary intention and that language in the light of the circumstances explaining it is lacking to show such a contrary meaning of the devise here considered. The plaintiff is advised accordingly.

*Case discharged.*

All concurred.