ESTATE OF ATKINSON: ATKINSON (Charles), Appellant,
v. ATKINSON (Luanne) and others, by Guardian *ad
litem,* Respondents.

*February 5—March 5, 1963.*

For the appellant there was a brief by *Geffs, Geffs, Block & Geffs* of Janesville, and oral argument by *Jacob Geffs*.

For the respondents there was a brief by *Kittelsen, Brand & Barry* of Monroe, and oral argument by *Rodney O. Kittelsen*.

CURRIE, J.   The sole issue on this appeal is whether the sale of land on land contract by a testator subsequent to the execution of his will, wherein he specifically devises such land, causes an ademption of such devise.

In Anglo-American law, ademption connotes the taking away of the subject matter of a specific legacy or devise by its destruction or disposition by testator in his lifetime.  3 American Law of Property, p. 604, sec. 14.13.  Thus the specific devise or legacy cannot be given effect because the specific property attempted to be devised or bequeathed is no longer part of testator's estate at the time of his death.  Under the modern theory of ademption testator's intention is disregarded, and the question is whether or not the specific property is part of testator's estate at the time of his death.  Smith, Ademption by Extinction, 6 Wisconsin Law Review (1931), 229, 231; Atkinson, Wills (hornbook series, 2d ed.), p. 741, sec. 134; 3 American Law of Property, pp. 607, 608, sec. 14.13; and Warren, The History of Ademption, 25 Iowa Law Review (1940), 290, 326.  As the author of the

case comment entitled, Wills: Intent as an Element of Ademption, 9 University of Florida Law Review (1956), 237, 238, stated:

"Intent of the testator is considered irrelevant, since the issue is not whether the testator sought to modify the will but whether there is an object upon which the will can operate."

The great weight of authority at common law, independent of statute, holds that testator's execution of a will with a specific devise of land and his later sale of this land works an ademption of the devise in his will even though he holds a land contract or purchase-money mortgage on which a balance remains due at the time of his death.[1] Some courts are not content to state that no object remains upon which testator's will can operate if at his death he has a substantial interest in the property either as the vendor on a land contract or as a mortgagee. Such courts go one step further and find that, although a substantial property interest remains in testator, an equitable conversion results from his sale of the land whereby his estate in the land is changed into personal property. This conversion follows on the theory that equity regards as done that which is agreed to be done. *Estate of Bernhard* (1907), 134 Iowa 603, 607, 112 N. W. 86.

[1] *Estate of Sprague* (1953), 244 Iowa 540, 57 N. W. (2d) 212 (land contract) ; *Estate of Bernhard* (1907), 134 Iowa 603, 112 N. W. 86, 12 L. R. A. (N. S.) 1029 (land contract) ; *Willoughby v. Watson* (1923), 114 Kan. 82, 216 Pac. 1095 (purchase-money mortgage) ; *Walker v. Waters* (1912), 118 Md. 203, 84 Atl. 466 (purchase-money mortgage) ; *Blaisdell v. Coe* (1927), 83 N. H. 167, 139 Atl. 758, 65 A. L. R. 626 (purchase-money mortgage) ; *Righter v. First Reformed Church of Boonton* (1952), 17 N. J. Super. 407, 86 Atl. (2d) 305 (land contract) ; *Lewis v. Thompson* (1943), 142 Ohio St. 338, 52 N. E. (2d) 331 (purchase-money mortgage) ; and *Newport Water Works v. Sisson* (1893), 18 R. I. 411, 28 Atl. 336 (land contract). See also 3 American Law of Property, p. 609, sec. 14.13.

Since the land contract or purchase-money mortgage constitutes personal property at the time of testator's death, no real estate remains as the subject of the devise, and the proceeds of the land contract or purchase-money mortgage are distributable to those bequeathed testator's personal property. Application of the common-law rule to the instant case would require an ademption of the devises contained in paragraphs Seventh and Eighth of the will, and distribution of the proceeds of the land contract as personal property under paragraph Ninth, the residuary clause.

The crucial question before us, however, is whether sec. 238.02 (1), Stats.,[2] applies to the instant devise so as to prevent an ademption and permit the devisees to take the same interest in the land contract that they would have taken in the land itself had testator not sold it prior to his death. We deem that the decision in *Estate of Lefebvre* (1898), 100 Wis. 192, 75 N. W. 971, requires an affirmative answer to this question. The facts and holding of that case are succinctly stated in the headnote to the opinion as follows:

"Under sec. 2278, R. S. 1878 (providing that every devise of land shall be construed to convey all the estate of the devisor therein, unless it shall clearly appear by the will that he intended to convey a less estate), a devise of certain land was not revoked by the subsequent making of a contract for its sale by the testator, upon which a nominal sum only was paid, where there is nothing to indicate an intention to revoke the devise, and, though it seems evident that the testator did not intend to die intestate as to any of his property, yet that would be the result of a revocation of the devise, there being no residuary clause in the will."

It was technically incorrect in *Lefebvre* to speak of a possible revocation of the devise as a result of the sale on land

---

[2] "Every devise of land in any will shall be construed to convey all the estate of the devisor therein which he could lawfully devise, unless it shall clearly appear by the will that the devisor intended to convey a less estate."

contract. The use of the word "ademption" would have been correct. Furthermore, the opinion in that case is partly grounded upon testator's assumed intention which is irrelevant in considering a question of ademption.[3]

Nevertheless, the significant facet of the *Lefebvre Case*, for the purposes of this appeal, is its holding that sec. 2278, R. S. 1878 (now sec. 238.02, Stats.), encompasses the situation in which testator-devisor at the time of his death merely holds a vendor's interest in a land contract under which the devised land has been sold to a vendee. If we were to pass on the applicability of that statute without the fetters of the *Lefebvre* precedent, we would have difficulty in reaching this result. This is because, under the doctrine of equitable conversion, testator-vendor's land contract is deemed personalty not real estate, and he holds the bare legal title merely as security for payment of the unpaid purchase price. *Krakow v. Wille* (1905), 125 Wis. 284, 287, 103 N. W. 1121, and *Mueller v. Novelty Dye Works* (1956), 273 Wis. 501, 505, 78 N. W. (2d) 881. 2 Pomeroy, Eq. Jur. (5th ed.), p. 25, sec. 368, explains the operation of this doctrine of equitable conversion as follows:

> "Equity carries out this doctrine to its consequences. Although the land should remain in the possession and in the legal ownership of the vendor, yet equity, in administering his whole property and assets, looks not upon the land as land, —for that has gone to the vendee,—but looks upon the money which has taken the place of the land; that is, so far as the land is a representative of the vendor's property, so far as it is an element in his total assets, equity treats it as money, as though the exchange had actually been made, and the vendor had received the money and transferred the land."

---

[3] Intention of the testator would have materiality in considering the application of sec. 238.02 (1), Stats. (formerly sec. 2278, R. S. 1878), if there was wording in the will to bring into operation the proviso portion of that subsection, *i.e.*, "unless it shall clearly appear by the will that the devisor intended to convey a less estate."

Nevertheless, we do not consider ourselves free to interpret the words "all the estate of the devisor therein . . ." of sec. 238.02 (1), Stats., as inapplicable to testator's ownership of a land contract in which he is the vendor. This is because these statutory words come before us bearing the judicial gloss placed thereon by the *Lefebvre Case*. We have said that the construction given to a statute by this court becomes part of the statute unless the legislature subsequently amends the statute to effect a change. *Hahn v. Walworth County* (1961), 14 Wis. (2d) 147, 154, 109 N. W. (2d) 653; *Meyer v. Industrial Comm.* (1961), 13 Wis. (2d) 377, 382, 108 N. W. (2d) 556; *Briggs & Stratton Corp. v. Department of Taxation* (1946), 248 Wis. 160, 164, 21 N. W. (2d) 441; and *Eau Claire Nat. Bank v. Benson* (1900), 106 Wis. 624, 627, 82 N. W. 604. Significantly, nearly sixty-five years have elapsed since this court's decision in *Lefebvre*.

Appellant urges that the legislature never intended sec. 238.02 (1), Stats., to apply to a situation involving a question of ademption. He points out that the purpose of the statute, as carefully explained in *Dew v. Kuehn* (1885), 64 Wis. 293, 25 N. W. 212, was to do away with the common-law presumption that a devise of lands without use of words of inheritance prevented the devisee's taking more than a life estate. Even if this would have been a sound reason for the court to rule the statute inapplicable to an ademption situation, nevertheless, the court did so apply it in *Lefebvre* and the legislature has not seen fit to rule out such an application.

Appellant further seeks to distinguish the instant case from *Lefebvre* by arguing that the instant will contains a residuary clause whereas the *Lefebvre* will did not. In the *Lefebvre Case,* however, the court gave significance to the absence of a residuary clause in seeking to ascertain testator's intent. This was error because testator's intent is irrelevant

when considering an ademption question. The only relevant question is whether or not the subject matter of a devise or legacy is present as part of testator's estate at time of his death. Therefore, we hold that the presence or absence of a residuary clause in a will is wholly irrelevant on the issue of whether testator-vendor's interest in the proceeds of a land contract is a sufficient object upon which a specific devise of that land can operate so as to prevent an ademption of the devise.

Appellant lastly contends that the rule of *Lefebvre* has changed by the enactment of sec. 312.01 (4), Stats., by ch. 415, Laws of 1959.[4] Because we deem this statute a mere codification of the doctrine of equitable conversion, which prevailed when the *Lefebvre Case* was decided, we find no merit in this contention. Proof that the doctrine of equitable conversion was in effect in 1898, when the *Lefebvre Case* was decided, is afforded by 1 Pomeroy, Eq. Jur. (2d ed.), p. 109, sec. 105. It is therein stated that a vendor under a land contract holds the legal title only as a trustee and upon his death his interest in the land contract constitutes personalty which passes to his personal representative and not to his heirs. See also *Milwaukee Protestant Home for the Aged v. Becher* (1894), 87 Wis. 409, 58 N. W. 774, for a situation in which this court applied the doctrine of equitable conversion prior to the *Lefebvre Case.*

We conclude that the provisions of sec. 238.02 (1), Stats., as construed in the *Lefebvre Case,* apply to the instant will and prevent an ademption.

*By the Court.*—Judgment affirmed.

---

[4] Sec. 312.01 (4), Stats., provides, "A land contract and the interest in the real estate described therein belonging to the decedent's estate shall be set forth in the inventory and treated:

"(a) As personal property, when the contract is to sell, and

"(b) As real property, when the contract is to purchase."

HALLOWS, J. (*dissenting*). *Estate of Lefebvre* (1898), 100 Wis. 192, 75 N. W. 971, was erroneously decided. This much is admitted by the majority opinion when it states the *Lefebvre* opinion was partly grounded upon the testator's intention not to die intestate, that the opinion has given judicial gloss to sec. 2278, R. S. 1878 (now sec. 238.02 (1), Stats.) and the present court would have difficulty in reaching such an interpretation of that section without the fetters of the. *Lefebvre Case*. *Lefebvre* was not partly grounded on the testator's intention; it was entirely grounded upon what the court thought the testator's intention was, which the majority opinion states was irrelevant. Taking that element out of *Lefebvre* leaves only a ghost of the holding, no flesh, no bones, no brains.

The majority opinion states under the doctrine of equitable conversion the vendor's land contract is deemed personalty, not real estate. This is not correct. The land contract by its very nature is personalty and the right to sue and recover the purchase price is personalty without the application of the equitable-conversion doctrine. What the doctrine does is to treat the vendor's legal title to the land which is subject to the land contract as personal property.

The majority opinion now rejects the whole doctrine of equitable conversion and holds that under sec. 238.02 (1), Stats., the debt follows the security—the wagon pulls the horse. The right to collect the purchase price is not an interest in land. Sec. 238.02 (1) does not require the legal title to the land held for security to carry with it the right to the purchase price. The legal title passes under the will and the statute, but the land contract does not. Under sec. 316.54 the heirs or devisees, or executor or administrator, may be required by the county court to convey the real estate which the deceased ought to have conveyed, if living, in compliance with the terms of the land contract.

The majority opinion hangs on the single silken thread that this court once descriptively characterized an interpretation of a statute as becoming a part of the statute. The majority takes this statement too seriously. The power of the supreme court to overrule a decision which it believes to be erroneous, is not, in my opinion, restricted to decisions dealing only with judge-made law but also extends to judge-made interpretations of statutes. Although *Lefebvre* has been on the books for sixty-five years, it has not once been cited as an authority by this court until now.

The plaintiff is correct in his argument the legislature never intended sec. 238.02 (1), Stats., to apply to the question of ademption. Taking the *Lefebvre* decision as written and unmodified by the majority opinion, it can be distinguished from the instant facts. Here, the testator's intention was to give to his son a residuary estate, whatever that might be. At the time of the testator's death he had only the bare legal title to the farm. He had sold it. If the testator intended his son to have a life estate in the farm and his grandchildren the remainder, why did he sell the property? Whether the modern theory of ademption is based on intention or not, there is no farm of which to give the son the life estate and the grandchildren the remainder. The result of the majority opinion is to create a trust of a chose in action to be gradually converted into money, if the land contract is unbreached by the vendee, giving the use of the principal to the son and upon his death the principal to the grandchildren.

The decision will create more problems in the administration of wills than it will solve. To obviate such difficulties, sec. 312.01 (4), Stats., was created in 1959. This section cannot be disregarded and ignored by stating it is a mere codification of the doctrine of equitable conversion. Sec. 312.01 (4) requires a land contract and the interest in real estate to be set forth in the inventory of the decedent's estate as personal property if the decedent is the vendor and as real

property if the decedent is the vendee. But more than this, the section requires the land contract and the interest in the real estate to be treated as personal property of the decedent-vendor and as real property of the decedent-vendee. This section being specific takes precedence over the general provisions of sec. 238.02 (1) and must be given effect. The effect is to overrule the holding of the *Lefebvre Case*. For these reasons, I respectfully dissent.