238

ZILPHA NOWAK *v.* GLADYS MARTIN ET AL

5-4280                                              419 S. W. 2d 300

Opinion delivered October 16, 1967

*Gardiner & Steinsiek,* for appellant.

*Marcus Evard, Oscar Fendler, Graham Sudbury* and *H. G. Partlow Jr.,* for appellee.

J. FRED JONES, Justice. This is the second appeal growing out of litigation over the last will and testament of Ida B. Crockett. The first appeal, *Nowak* v. *Etchieson,* 241 Ark. 328, 408 S. W. 2d 476, concerned the validity of the codicil to the will and the disposition of a lapsed legacy. The present appeal concerns the disposition of rents from farm lands held by the trustee under a testamentary trust created by paragraph nine of Mrs. Crockett's will. The exact question presented is whether or not rents from the real property collected between the death of the testatrix and the sale of the real property under power of the trust, are to be distributed to the *cestui que* trust, along with the proceeds from the sale of the real property under item nine of the will, or whether these rents are to be distributed to the residuary legatees under item ten of the will.

After providing for the payment of funeral expenses, debts and other specific legacies, items nine and ten of the will, insofar as they relate to the question here involved, are as follows:

"9. I give and devise to J. F. Etchieson, of the City of Blytheville, Arkansas, as trustee for the uses and purposes hereinafter mentioned and set forth, all of the rest and residue of my real estate, wherever the same may be situated, of which I shall die seized and possessed, to be held and disposed of by him as such trustee in the manner hereinafter provided.

"It is my will and command that the said trustee shall, as promptly after my death as he shall feel a reasonable price may be obtained therefor, sell all of my said real estate at private sale for the best obtainable price, and that, after deducting from the proceeds of such sale reasonable compensation for

his time, effort and business judgment together with any expense incident to the sale, divide the proceeds of such sale equally among the within named ELLA CUNNINGHAM, BERTHA MILLER AND GLADYS MARTIN. If any notes or instruments of security shall be received in connection with any such sale said trustee shall personally endorse and assign the same without recourse on himself to the above three persons as tenants in common owning equal interest with each other. For these purposes, my trustee is hereby given absolute power and authority to negotiate and enter into any and all things, contracts and agreements for the sale of said property and to execute, acknowledge and deliver all contracts and instruments of conveyance that he shall deem to be expedient or desirable in connection with the disposition of such real estate. My trustee shall not be required to seek any authority from any other or other [sic] tribunal or to make any report to any other, tribunal or person other than the three beneficiaries of the trust who have been named herein.

\*　　\*　　\*

"10. I give and bequeath to my nieces, ZILPHA NOWAK and ELLA LUTZ, as tenants in common owning equal interests with each other, all of the rest and residue of my property, if there be any such residue, that shall remain after the foregoing provisions of my will shall have been fully complied with."

Ella Cunningham and Ella Lutz were one and the same person and predeceased the testatrix. Her share of the proceeds from the sale of the real property under item nine of the will, went to the heirs of the testatrix as a lapsed legacy under our holding on the previous appeal. In the case at bar, the trial court made the same division of the rents and held that Bertha Miller and Gladys Martin were each entitled to one-third of the

rents, with the remaining one-third to be distributed to the heirs at law of Ida B. Crockett. Zilpha Nowak, as the sole surviving residuary legatee under paragraph ten of the will, brings this appeal and relies on three points for reversal, as follows:

"1. The farm rents from the lands of Ida B. Crockett are considered as personalty and belong to the Executor of the Estate.

"2. Said farm rents pass under the provisions of Paragraph 10 of the Last Will and Testament of Ida B. Crockett.

"3. In the Probate action, if said rents do not pass under Paragraph 10 of the Last Will and Testament said rents are intestate property and belong to all heirs at law of the decedent, Ida B. Crockett."

The points relied on are so closely related to the same rule of construction we shall not attempt to treat them separately.

Appellant contends that there was an equitable conversion of the real estate devised to J. F. Etchieson in trust, and that this real property should be treated as personalty from the date of the death of Mrs. Crockett until the date of sale. Appellant earnestly contends that the rents collected from this real estate while in trust, and prior to the exercise of the power of sale under the trust, constituted separate personal assets of the estate of the decedent to be administered as such; that since the rents were not needed for the payment of funeral expenses, debts and other legacies, and since they were not specifically mentioned in other legacies, they should be charged to the account of the executor and distributed as residue under item ten of the will. The thrust of appellant's contention is that since the real property was converted to personalty, item nine of the will devised personal property consisting only of the proceeds from

the *sale* of the real estate and that the rest and residue of the estate, consisting of rents from the real property should go to appellant under paragraph ten of the will.

We agree that a conversion of the real estate was effected here and agree, that for the purpose of the will, the conversion related back to the death of the testatrix. We do not agree that an equitable conversion of real property under the power of a testamentary trust, automatically, and by operation of law, separates the proceeds of the sale under the power from the income derived from rents on the real property prior to the exercise of the power of conversion. Certainly we do not agree that an equitable conversion under the power of a testamentary trust can defeat the object of the trust or the intentions of the testator in creating it.

The taking of rents and profits is a necessary incident of possession and where there is no express direction as to the disposition of rents and profits, the reasonable implication is that they are to go to the persons beneficially interested in the estate. *Hubbard* v. *Housley et al*, 59 N. Y. Supp. 392, 43 App. Div. 129.

The estate of Mrs. Crockett was entirely solvent and it was not necessary to sell her real estate to pay debts. But, even in a case where it is necessary to sell real estate to pay debts and where a sale is ordered because a decedent's estate is insufficient to pay his debts, it has been held that the rents accruing after the decedent's death and before the exercise of a power of sale go with the title to the land to the heirs or devisees, and not to the executor or to the purchaser under the power. *Bittle* v. *Clement, et al*, 54 Atl. 138 (N. J. 1903).

The question here is not whether there was or was not an equitable conversion. It is obvious that there was. The question is not whether the real property of the decedent was to be considered personal property from the date of decedent's death for purposes of the will

—we conclude that such is the incidental effect of an equitable conversion. The real question here is whether the rents constitute a portion of the personal estate of the testatrix to be administered as such outside the power of the trust.

The cases cited by appellant do not reach the precise point on this question, but this precise point was before the Supreme Court of Rhode Island in the early case of *Hendrick* v. *Probate Court of East Greenwich,* 55 Atl. 881, 25 R. I. 361, and the question there involved being so near in point with the question here, we quote rather extensively from the decision in that case.

In the *Hendrick* case, a Mrs. Jones died testate. The named executor renounced the trust conferred upon him and the decedent's husband, Mr. Jones, was appointed and qualified as administrator with will annexed. Mr. and Mrs. Jones owned real property as tenants in common. As to her undivided one-half interest in a part of the real property, Mrs. Jones' will provided:

" 'I direct my executor hereinafter named, as soon after my decease as he can conveniently do so, to sell, at public or private sale, as he may deem best, my interest in the estate known as the Tillinghast estate, . ... and to pay over and divide the fund arising from said sale to and among the following named persons, in the proportions specified, to wit.' "

Then follows a list of the persons amongst whom said fund is to be divided.

After the death of Mrs. Jones, her husband administrator collected rents from the real estate in the amount of $280.00. A Mr. Hendrick, as an interested party, contended that one-half of this rent money should be charged to the administrator in his account and in this connection, the court said:

"The only question presented for our decision in this case is whether the administrator, as such, is properly chargeable with one-half of the rents collected from said estate as aforesaid. If the rents constitute a portion of the personal estate of the testatrix, of course they are properly chargeable to him in his account; but, if they do not, then they are not so chargeable. At the trial of the case the court directed the jury to find that the amount of $140—this being one-half of the amount of rent collected—should be charged against Mr. Jones, and be accounted for by him; and they accordingly so found. We think this instruction was error. Under the will of Mrs. Jones, as we construe it, the entire beneficial ownership of the real estate devised by virtue of said twenty-fifth clause thereof passed immediately to the persons named as beneficiaries, and hence whatever rents were collected belonged to them. The direction to sell contained in said clause amounted, in effect, to an equitable conversion of said real estate into personalty, and impressed it with a trust in favor of said beneficiaries. And the mere fact that the real estate was not immediately converted into personalty did not have the effect to deprive the beneficiaries of any part of said property. The duty of the administrator c. t. a. under said clause was to convert said real estate into personalty as soon as he could conveniently do so after the death of the testatrix, and distribute the proceeds of such sale as directed. This direction impressed a trust upon the land, and specified who should execute said trust. The power of sale given in said clause was not a naked power, but was coupled with a trust, which required the execution of the power as soon as might be. And in powers which are in the nature of trusts, as said by the court in *Greenough* v. *Welles,* 10 Cush. 576, 'the rights and interests of third parties who are beneficially interested in the trusts which arise and grow out of the execution of the power come in and can be enforced as against the party to whom the power is given.

\* \* \* When a trust is to be effected by the execution of a power, then the trust and power become blended, and binding upon the donee of the power. The most familiar instance given in the books of such a union is the case where a power is given by a will to sell an estate, with direction to apply the proceeds upon a trust.' See *Gibbs* v. *Marsh,* 2 Metc. (Mass.) 243. In *Leeds, Ex'r.* v. *Wakefield,* 10 Gray, 517, Shaw, C. J. says: 'As a general rule, one clothed with a mere naked power may execute the power or not, at his own will; but one invested with a power to which a trust is annexed is bound in equity, as in other cases of trust, to execute the power, in order that the equitable rights of those who are stated as the objects of the testator's bounty under such trusts may have the enjoyment of the benefits intended for them.' The doctrine that in equity the beneficial interest in property is the controlling and real interest, and also that where, under a devise, an estate is to be sold, and the proceeds divided among designated parties, such direction amounts to an equitable conversion of the estate into personalty, was fully elaborated by Stiness, J., in delivering the opinion of this court in *Van Zandt* v. *Garretson,* 21 R. I. 418, 44 Atl. 221. See, also *Newport Water Works* v. *Sisson,* 18 R. I. 411, 28 Atl. 336. And while it is true that the proceeding before us is not technically an equitable one, yet, for the purpose of determining as to the rights of the parties relating to said rents, we see no reason why said doctrine should not be applied. Moreover, it is well settled law in this state that a probate court has nothing to do with the real estate, or the rents of real estate, of a deceased person, until the proper legal steps have been taken to place such property in the hands of the executor or administrator for the necessary purpose of settling the estate. That is to say, until the personal property of a decedent is exhausted in the payment of debts and legacies, neither the executor, the administrator,

nor the probate court has anything to do with the real estate or the income thereof, except as may be directed by the will, if there be a will. As said by Matteson, C. J., in *Grinnell* v. *Baker,* 17 R. I. 49, 23 Atl. 913: 'The ordinary powers and duties of an executor are to take possession of the goods and chattels of the testator; to collect the debts due to him; to sell the goods and chattels, so far as may be necessary for the payment of the testator's debts and the pecuniary legacies and expenses of administration; and to distribute the residue of the assets among the persons entitled to them under the provisions of the will. If to these ordinary powers and duties there is superadded the power and duty to invest portions of the testator's estate and to pay over the income, such power and duty, being appropriate to the office of a trustee, rather than of an executor, are held to constitute a trust, and the executor, in executing them, is regarded as a trustee, and not as executor.' Applying this rule to the case now under consideration, it clearly appears that said Charles B. Jones, administrator c. t. a., held the rents in question as trustee for said beneficiaries, and not as administrator c. t. a.; and hence it follows that he is not chargeable therefor in his account as such administrator. The exception taken to the ruling of the presiding justice relating to said item of rent must, therefore, be sustained.''

Although Mr. Etchieson was the executor, as well as trustee with power of sale under the will of the testatrix, the estate was entirely solvent in personal property and there was no need for the executor to invade the real property. There was no need for the executor to invade the appellees' beneficial interests in the real estate or the rents therefrom for any purpose. The testatrix was specific in separating the duties of Mr. Etchieson as executor and as trustee. The testatrix did not merely execute a will coupled with a naked power of sale. The power was coupled with a trust, the testa-

trix was specific in separating the duties under the power in the *trustee* from the duties of the *executor*. She not only placed the trustee in possession of the trust property with a power to sell her real estate, her directions to the trustee impressed a trust upon the land, and the trustee was to account to no one except the named beneficiaries of the trust. It clearly appears in this case, as in the *Hendrick* case, supra, that Mr. Etchieson held the rents in question as trustee for the beneficiaries and not as executor, and that the chancellor was correct in ordering the distribution of the rents to the beneficiaries of the trust and not to appellant as residuary legatee under item ten of the will or to the heirs of the decedent.

We are of the further opinion that it was the testatrix's intention that the appellees have all the beneficial interest in the real property converted, including the rents therefrom, as well as the proceeds from the sale. We conclude that the chancellor's findings are not against the preponderance of the evidence in this case, and that the decree should be affirmed.

Affirmed.