# Richmond

## R. A. DANIEL v. WILLIAM H. YEARICK.

March 1, 1948.

Record No. 3299.

Present, All the Justices.

The opinion states the case.

*Harry L. Snead*, for the appellant.

*Jones & Jones,* for the appellee.

STAPLES, J., delivered the opinion of the court.

This controversy arose out of a sale by the appellant, R. A. Daniel, to the appellee, William H. Yearick, on March 16, 1931, of certain real estate situated in the City of Hopewell, Virginia. The purchase price of the property was $5500, $3500 of which was represented by deferred purchase money notes secured by a first lien deed of trust upon the property. The sum of $550 was paid in cash, leaving a balance of $1450 which is the subject of this litigation. There is no dispute about the fact that the sale was negotiated and the settlement made by appellant's duly authorized agents VanPelt and Hunter, real estate brokers located in the city of Hopewell, and that appellant, a resident of North Carolina, was not present on the day the sale was closed. Appellee's testimony is to the effect that these agents offered the property to him for sale at the price of $5500, payable $2000 cash and the balance at the rate of $35.00 per month; that at that time he owned a second mortage bond of Simon H. Risner and wife in the sum of $1450 which was secured by lien upon certain property in New Jersey belonging to them; that he stated to the real estate agents that he would like for them to sell this bond and apply the proceeds on the proposed cash payment of $2000; that said agents later reported to him that they had taken the matter up with the owner of the property, the appellant, who had agreed to accept the bond at face value as part of the cash payment. On the day the final settlement was made, the appellee assigned all of his right, title, and interest, in the said bond to the appellant as evidenced by the following endorsement thereon:

"For value received, I do hereby assign, transfer, set over and deliver unto R. A. Daniel all my right, title, equity and interest, of whatever nature or kind, in and to the within bond, which is secured by a mortgage dated

the 28th day of January, 1931, from Simon H. Risner and wife to William H. Yearick, recorded in the Office of the Register of Deeds of the County of Camden, N. J. in Book 365, at Page 525.

"And I further assign all rights and remedies both in law and equity for the enforcement and collection of the said bond, which are incidental thereto by virtue of law or otherwise, including the right to proceed in my name for the collection and enforcement of the same.

"Given under my hand and seal this 2nd day of April, 1931.

"(Sgd.) WILLIAM H. YEARICK, SR. (Seal)

"Witnesses:

"Allen C. Adams

"J. L. Van Pelt."

Appellant's agents then gave to the appellee a receipt showing a cash payment of $2000 upon the property.

The appellant testified that he was not present when the settlement was made, but that it was his understanding that the cash payment was to be only $550 instead of $2000, and the balance of $4950 was to be paid at the rate of $35.00 per month, to be evidenced by a note and secured by a deferred purchase money deed of trust and by the Risner bond as additional collateral security.. At the time of the sale there was a lien upon appellant's property for the sum of $1408, payable at the rate of $32.00 per month, which was held by the City Savings and Loan Corporation of Petersburg. Pursuant to appellant's instructions his agents, VanPelt and Hunter, delivered the $3500 purchase money note of appellee, and also the Risner bond, to said Savings and Loan Corporation as collateral security for the payment of the balance due on said corporation's debt against said property. Appellant states that he thought the face value of the notes of appellee to be delivered to said loan company was $4950 instead of $3500. It is stated in appellee's pleadings and not denied that the appellant, in addition to his brokers, was also represented at the closing of said sale by his attorney Allen C. Adams, who

witnessed the assignment of appellee's interest in the Risner bond.

It appears from the record that Simon H. Risner and wife failed to pay the mortgage bond when it became due on February 28, 1933, which was about two years after the sale of the Hopewell property to appellant. In a letter dated April 26, 1933, from Harry L. Snead, attorney for appellant, addressed to Mr. and Mrs. Simon H. Risner, Merchanville, New Jersey, it was stated that the appellant, R. A. Daniel, was the owner of their bond, and that it had been assigned to him by appellee, William H. Yearick. The letter requested advice from the Risners as to when payment of the bond could be expected in order to avoid a foreclosure of the property. There seems to have been no reply to this letter, and on July 29, 1933, Mr. Snead again wrote to Mr. and Mrs. Risner suggesting that they might secure a Home Owner's Loan in order to take up the mortgage and save their property from foreclosure. No. reply to this letter was received. On the same date, July 29, 1933, Mr. Snead also addressed a letter to the appellee advising him of previous notices with respect to defaults in payments on his note due appellant, and inform- ing the appellee that the appellant had turned over to him "the bond which you gave him"; also that the bond had not been paid, and that the appellant was threatening to have the New Jersey property securing same sold under foreclosure. The suggestion was made that appellee arrange to see Mr. Snead about the matter.

The record does not disclose any further correspondence on the subject between the appellant or his attorney and the obligors on the bond until about ten years later, when, on July 1, 1943, a letter was addressed to Mr. Snead by Albert J. Klein, attorney for Mr. and Mrs. Risner, stating that their property was subject to a first mortgage of approximately $3300, and that this was the maximum amount of the value of the property. An offer of $100, however, was made for the bond, which was still in Mr. Snead's hands for collection. After some further corre-

spondence, an offer of $600 was received by Mr. Snead for the bond, and it was eventually compromised and settled on that basis in October, 1945, pursuant to a decree entered in this cause, without prejudice to the rights of either appellant or appellee.

In the meantime, it appears that in August, 1935, the appellee was in arrears in the payment of his monthly notes and the appellant instructed Harry L. Snead, Trustee, to make sale of the property under the deed of trust. This was four years and four months after the property had been conveyed to the appellee. Thereupon, the appellee, Yearick, instituted a suit in the Circuit Court of the City of Hopewell for the purpose of enjoining said sale. The injunction was granted by the court staying the trustee's sale so long as the appellee, Yearick, should pay the sum of $35.00 per month on his debt. The suit now before us was instituted June 9, 1945, by appellee to enjoin a second threatened foreclosure of the deed of trust by Harry L. Snead, Trustee, and to determine the correct amount, if any, which appellee owed appellant on account of the indebtedness thereby secured. Appellant alleges in his answer that in said 1935 chancery suit he had set up the same facts and circumstances with respect to his rights in connection with the Risner bond as those he now relies upon in this suit. He did not further prosecute his claim, however, and about five years later, in 1940, the suit was dismissed without appellant's knowledge. The only assertions of any rights by the appellant in any court were those made in these two injunction suits instituted by the appellee. The appellant took the position in his answer and cross-bill in the court below that a mistake was made in closing the sale and for that reason he was entitled to a reformation of the deed of trust from appellee so as to include therein the portion of the purchase price represented by the $1450 Risner bond which appellant understood was to have been originally embraced therein; that in any event the appellee was personally liable to the appellant for the unpaid balance of said bond because of

his endorsement thereon as above set forth. The court rejected these contentions and entered a decree fixing the amount of the indebtedness from appellee to appellant in the sum of $274.86, and directed that the appellant, upon the payment to him of said sum, should mark the deed of trust satisfied. It was to review that decree that this appeal was allowed.

We think the circuit court was correct in its conclusion that the appellant was not entitled to a reformation of the deed of trust. Assuming the facts stated by him to be true, they do not show any mistake on the part of the appellee. The transaction was carried out, and the deed, deed of trust, and purchase money notes all were executed, in conformity with the agreement between appellee and the said agents of the appellant. The appellant had executed the deed and entrusted it to said agents to be delivered by them to the appellee, thus clothing said agents with full ostensible or apparent authority to act for him in the matter. If said agents exceeded or abused their actual authority, there is no evidence that the appellee had any actual or constructive notice thereof. The appellant is clearly bound by the acts of his agents within the scope of their ostensible or apparent authority. *Amalgamated Clothing Workers* v. *Kiser*, 174 Va. 229, 234, 6 S. E. (2d) 562, 125 A. L. R. 1251; *Southern Packing Corp.* v. *Crumpler*, 175 Va. 431, 9 S. E. (2d) 446, and cases therein cited. If they exceeded their actual authority to the injury of the appellant, he can look only to them for redress.

The circuit court also held that there was no liability upon the part of the appellee to appellant because of the above quoted assignment endorsed on the bond. Appellant's cross-bill had alleged that by reason thereof the appellee was liable to him as an endorser. The bond is not a negotiable one, as it is not payable to the appellee "or his order". Virginia Code sections 5563, 5570. It reads, "the Obligors are held and firmly bound unto William H. Yearick, of Hopewell, in the State of Virginia (herein-

after called the Obligee), in the sum of Twenty-nine Hundred Dollars, lawful money of the United States of America, to be paid to the said Obligee, his certain Attorney, Executors, Administrators or Assigns; * * * ." The sum above stated was the amount of the penalty of the bond to be discharged by the payment of $1450.

Clearly the placing of the assignment on the bond did not render the appellee liable as an endorser. As said by this court in *Welsh* v. *Ebersole*, 75 Va. 651, 661, "In the case of negotiable securities, the endorsement is not a mere transfer, but a new contract embodying all the, terms of the instrument, and derives its efficacy from the instrument itself. The legal import of the contract being clear and definite, parol testimony is held to be inadmissible to give a different effect to the endorsement from what the law implies. In the case of a nonnegotiable security, however, the endorsement does not pass the legal title. It has no direct legal import. It may mean an assignment where there is a subsisting obligation, or, as in the present case, a guaranty or some other form of undertaking to be established by the evidence. * * *."

The rule in Virginia is that, in the case of an unconditional and unrestricted assignment of a nonnegotiable bond, there is an implied contract created thereby that, in the event the assignee, by the exercise of due diligence, cannot recover the debt assigned, the assignor will reimburse him for the consideration which he received for the bond. See *Long* v. *Pence*, 93 Va. 584, 25 S. E. 593. However, in the case now before us, the assignment itself is a qualified one. It is not an assignment of the instrument itself, but only of the assignor's rights in said instrument and also of his legal remedies for the collection of same. An assignment in these restrictive terms rebuts the creation of any such implied promise of reimbursement. It does not even imply any obligation upon the assignor to indemnify the assignee against any loss which may arise by reason of any imperfection in the instrument itself, or in the lien securing same. Its legal effect is to render the

assignee subject to the principles of *caveat emptor*. His position is analogous to that of a grantee in a deed conveying lands with special warranty of title, who has no recourse against the grantor for any imperfection or failure in the title with which he is vested. Such an assignment of the right, title, and interest, of an assignor in a bond has generally been so construed. *Hailey* v. *Falconer*, 32 Ala. 536; *Lyons* v. *Divelbis*, 22 Pa. 185, 186; *Aniba* v. *Yeomans*, 39 Mich. 171, 173.

It may not be amiss to say, however, that even if appellee were subject to the liabilities of the ordinary implied contract of an assignor, nevertheless, the appellant has failed in the record before us to show that he exercised due diligence to recover the debt from the obligor of the bond. There appears to have been a period of about ten years during which the appellant apparently made no effort to collect the debt from the obligor, or to enforce the mortgage securing same. The correspondence in the record shows that at the time the $600 compromise was accepted, the property had become so run down and was in such a bad state of repair that its value was very much impaired. Whether this could have been obviated by greater diligence on the part of the appellant, the record does not show. However, unquestionably it is incumbent upon the appellant to both allege and prove the exercise of such due diligence on his part, and this burden he has failed to carry.

Appellant also contends that there was a compromise settlement with appellee made in 1934 on a basis of $4000 in Home Owners' Loan Bonds. This agreement was conditional on securing such a loan which was attempted, but without success.

On the whole case, we find no error in the decree appealed from and it is accordingly

*Affirmed.*