EAST AUGUSTA MUTUAL FIRE
INSURANCE COMPANY OF VIRGINIA
v.
RICHARD Q. HITE, JR.

January 12, 1979.

Record No. 770895.

Present: All the Justices.

*Victor M. Santos; Richard F. McPherson (Nelson, McPherson, Summers, Wood & Bishop*, on briefs), for plaintiff in error.

*Richard S. Tilley* for defendant in error.

I'ANSON, C.J., delivered the opinion of the Court.

Richard Q. Hite, Jr., plaintiff, brought this action against the defendant, East Augusta Mutual Fire Insurance Company of Virginia, to recover under a homeowner's insurance policy for the loss of personal property destroyed by fire in a dwelling formerly owned by plaintiff. The case was tried by the court below, sitting without a jury, and judgment was rendered against the defendant in favor of the plaintiff in the amount of $8,786.45.

Plaintiff was the owner of a residence in Roanoke County which was covered by the homeowner's policy. The policy insured the residence for $24,000, with an automatic coverage of one-half that amount, $12,000, for unscheduled personal property under "Coverage C" of the policy. Other coverage included personal liability (bodily injury and property damages) and medical payments for accidental injuries sustained on the premises. The annual premium was the gross sum of $90.

The real estate described in the policy was subject to a deed of trust held by Colonial American National Bank of Roanoke. The policy was held by the bank and the insurance premiums were paid to the defendant from an escrow account with the bank.

Plaintiff, an experienced real estate broker, authorized another broker, James L. Phillips, to sell the property. Thereafter, John B. Pendleton, Jr., agreed to purchase the property.

The contract of sale entered into on January 20, 1976 between the plaintiff and Pendleton provided, *inter alia*, that Pendleton would assume the deed of trust obligation to the bank, and that "all rents, interest, taxes, insurance, and FHA or similar escrow deposits if any, shall be pro-rated as of settlement date." Plaintiff and Pendleton also entered into an agreement whereby plaintiff would be allowed to remain in possession of the residence for approximately two weeks after the closing date of the sale.*

On the day of settlement, February 23, 1976, plaintiff was neither present nor represented by counsel. Phillips, acting as agent for the plaintiff, delivered the deed conveying the property to Pendleton and prepared settlement statements for both the seller and buyer. The statements listed, as separate items, an insurance proration credit to the plaintiff in the amount of $80.10 and also a credit of $82.48 which plaintiff had paid into the escrow account for insurance and taxes. After settlement was completed, Pendleton, at the suggestion of Phillips, called the local agent of the defendant and had the policy transferred to him as the insured with the assignment becoming effective the next day. On February 24, plaintiff received from Phillips the settlement statement and a check for the amount due him from the sale.

On the night of February 25, 1976 the residence was damaged by fire and plaintiff's personal property still located on the premises was destroyed.

The defendant paid Pendleton for the damage to the real estate but refused to pay the plaintiff's claim for the loss of his personal property on the grounds that the policy had been assigned to Pendleton and that the plaintiff's personal property was not covered under the provisions of "Coverage C" of the policy.

Plaintiff testified that he did not authorize anyone to assign the policy to Pendleton and he had not received any notice of the

---

* It may be presumed from the evidence that the permission granted was for the purpose of giving plaintiff additional time to remove his household goods and other personal property.

assignment prior to the fire. He said, however, that at some time prior to the date set for closing the sale Phillips called him to obtain the name of the local agent of his insurance company and that he gave Phillips the information.

Pendleton and Phillips testified that at some time prior to the date of settlement, plaintiff had agreed to the assignment of his policy to Pendleton.

The trial court held that the plaintiff was an insured under the policy because his personal property was not involved in the sales transaction (consequently "Coverage C" was still in effect at the time of the fire), and for the further reason that plaintiff's personal property was on the premises with the consent of the then-named insured, Pendleton, when the fire occurred.

The issues presented are:

(1) Whether Phillips had the authority to authorize the assignment of plaintiff's policy to Pendleton;

(2) Whether the policy was entire or divisible as to the real and personal property; and

(3) Whether the plaintiff's personal property was covered under the policy since it was on the premises with the consent of the insured Pendleton.

The defendant contends that Phillips had the authority to authorize the transfer of plaintiff's insurance policy to Pendleton.

■ A principal is bound by the acts of his agent within the scope of the agent's ostensible or apparent authority. *Daniel* v. *Yearick,* 187 Va. 396, 403, 46 S.E.2d 333, 335-36 (1948). *See also* 1A Mich. Jur. *Agency* § 19 at 457-58, and the numerous cases there cited. *Cf. Lacey v. Cardwell,* 216 Va. 212, 217, 217 S.E.2d 835, 839 (1975).

In the present case, the contract of sale between the plaintiff and Pendleton provided for the assumption of the deed of trust and the proration of the insurance premiums and escrow deposits as of the date of settlement. Both Pendleton and Phillips understood plaintiff had agreed that the policy of insurance would be transferred to Pendleton. Moreover, the settlement statement received by plaintiff on February 24 showed a credit to him in the amount of the unearned premium on the policy. This alone should have indicated to the plaintiff, an experienced real estate broker, that the policy was being assigned to Pendleton.

On the date of settlement, plaintiff did not appear and he was represented by Phillips. Plaintiff had executed the deed to the property and entrusted it to Phillips for delivery to Pendleton.

Thus, plaintiff clothed Phillips with ostensible or apparent authority to act for him in the transaction and, even though plaintiff later said he did not authorize the assignment of the policy, he is bound by the acts of his agent within the scope of that authority. *Daniel*, *supra.*

We hold that Phillips was at least a special agent for the plaintiff and that he had the authority to authorize Pendleton to notify the defendant's local agent to transfer plaintiff's policy to Pendleton.

■ The defendant contends that the insurance policy issued to the plaintiff was entire and indivisible and that the policy was terminated as to the plaintiff by the conveyance of the real estate and by the assignment to Pendleton.

On the other hand, plaintiff contends that the policy is divisible and that the change of title to the real property did not void the coverage of the personal property in the residence.

There is a conflict of authority on the question whether an insurance policy issued for a gross premium on several items or classes of property separately valued is entire or divisible, in the absence of a clear manifestation of the intention of the parties. There are three distinct rules on the question, each of which finds support by substantial authorities. They are: (1) that the contract is entire, (2) that the contract is divisible, and (3) that the entirety of the contract depends upon the entirety of the risk. 43 Am. Jur. 2d *Insurance* §§ 300, 301 and 302 at 360-64 (1969), and the numerous authorities there collected.

In the present case, the policy is silent as to whether it is entire or divisible. Thus, in order to determine the intention of the contracting parties, we must look to the subject matter of the policy, the situation of the parties, and the object they had in view at the time and intended to accomplish. *L. O'Quinn, et al.* v. *P. Looney, et al.*, 194 Va. 548, 551, 74 S.E.2d 157, 159 (1953); *Eschner* v. *Eschner*, 146 Va. 417, 422, 131 S.E. 800, 802 (1926).

The specific purpose of the policy of insurance in the present case was to afford protection to the homeowner, and the intention was to insure those who had the requisite interest in the residence located on the real property.

The homeowner's policy, under "Coverage C" — unscheduled personal property — in pertinent part, reads as follows: "This policy covers unscheduled personal property usual or incidental to the occupancy of the premises as a dwelling and owned or used by an insured, while on the described premises and, at the option of

the named insured, owned by others while on the portion of the premises occupied exclusively by the insured."

The focal point of the policy is the dwelling, and the coverage for personal property is inextricably bound up with the coverage of the dwelling. The amount of the coverage on the unscheduled personal property was based on one-half of the amount of the coverage on the dwelling. The yearly premium for the entire contract of insurance was the gross sum of $90.

We believe the better rule, which is in accord with the modern trend, on the question of the divisibility of a contract of insurance for a gross premium on several items of property separately valued, is that it depends upon the nature and entirety of the risk. Thus, where the property is so situated that the risk of one item affects the risk on the other, the contract is entire and not divisible.

Here the real and personal property was so situated that the risk to one affected the risk of the other. Thus, we hold that the policy was entire and not severable, and that the termination of plaintiff's coverage on the real property terminated coverage on his personal property.

Nor was the plaintiff's personal property covered under the policy by the fact that it was on the premises with the consent of the insured, Pendleton, at the time of the fire.

In "Coverage C", the item "unscheduled personal property" of the policy, in relevant part, reads as follows:

"This policy covers unscheduled personal property . . . owned by others while on the portion of the premises *occupied exclusively by the insured*." (Italics supplied.)

The facts clearly show that Pendleton, the insured, was not yet occupying the premises exclusively. Thus, plaintiff's personal property was not covered under this clause of "Coverage C". Pendleton's agreement to permit plaintiff's personal property to remain on the premises for approximately two weeks after settlement did not bind the defendant.

For the reasons stated, the judgment of the court below is reversed and set aside, and judgment is here entered for the defendant.

*Reversed and final judgment.*