# CIRCUIT COURT OF THE CITY OF CHARLOTTESVILLE

Julian D. Layne

v.

Boggs et al.

March 11, 1993

Case No. (Chancery) 7657-C

BY JUDGE PAUL M. PEATROSS, JR.

Ruth Boggs died on November 30, 1991, leaving a will dated November 3, 1980, which was admitted to probate before the Clerk of the Circuit Court on December 16, 1991. The will made specific bequests of $102,500.00 and various personal property and contained the following paragraph:

> Fifth: I direct that my Executor offer to sell to S. C. Sloan, if he survives me, my home at 1325 Kenwood Lane, Charlottesville, Virginia, for the sum of $70,500.00 in cash, or at the price of the last fair market value appraisal for real estate tax purposes, whichever is lower. Said S. C. Sloan shall have thirty (30) days from the date of the qualification of my Executor to accept said offer and thirty (30) days after acceptance to close the transaction.

The will further provided that any residuary estate be divided among nieces and nephews. At the date of her death, Ruth Boggs's estate was valued at $141,441.00.

The Complainant, Julian D. Layne, was named attorney-in-fact for Mrs. Boggs pursuant to a durable power of attorney dated April 19, 1984. He was appointed Guardian of Mrs. Boggs's estate by Decree of this Court entered March 28, 1985. The will named Mr. Layne, who is Mrs. Boggs's nephew, as the Executor as well.

On October 31, 1991, about one month before Mrs. Boggs died, Mr. Layne sold the Kenwood Lane property on her behalf, signing the deed as her attorney-in-fact. The net sales price of the property was

$118,075.33. On December 16, 1991, Mr. Layne admitted Mrs. Boggs's will into probate and qualified as executor of her estate. He has brought this suit for aid and guidance to determine the effect of the sale of Mrs. Boggs's residence on the option granted to Mr. Sloan in the fifth article of the will. Respondent S. C. Sloan has claimed that he is entitled to at least the difference between the net sales price and the $70,500.00 for which the home was to be offered to Respondent Sloan.

## Discussion

The first issue to consider is the nature of the gift contained in the fifth Article of the decedent's will. As noted above, this section of the will directed the Executor of Mrs. Boggs's estate to offer her residence, located at 1325 Kenwood Lane, for sale to S. C. Sloan. The property to be offered was positively identified and was distinguished from any other property which might have been held in Mrs. Boggs's estate. Clearly, the gift described in Section Five of the will could not be satisfied out of the general assets of the estate and so must be described as a "specific legacy." *Warner v. Baylor*, 204 Va. 867, 874 (1964).

In addition, the language of the bequest makes it clear that the Executor, Mr. Layne, was to be given no discretion regarding the sale of the property, so long as Mr. Sloan survived Mrs. Boggs. Rather, Mr. Layne was directed by the will to offer the residence to Mr. Sloan for the price of $70,500.00, or fair market value, whichever was lower. In turn, Mr. Sloan was given the option to purchase the property but was not obligated to do so. Because the duty to sell and the duty to buy arising under the will were not reciprocal obligations, the Court concludes that the gift to Mr. Sloan was an option to purchase specific property and not a right of first refusal. *Bauserman v. Digiulian*, 224 Va. 414, 417 (1982).

## Validity of Option

A testator may, in her will, grant to another an option to purchase property of the estate, whether at its appraised value or at some other named price. 96 C.J.S., *Wills*, § 1104. However, for such an option to be effective, the specific property subject to the option must be prop-

erty of the estate.[1] Under Virginia law, this condition must be met at the time of the testator's death unless a contrary intention plainly appears in the will. Va. Code § 64.1–62. If the underlying property is not in the estate at the time of the testator's death, then any bequest purporting to convey an option to purchase that property will ultimately fail.

*Conversion*

The critical issue in the case at bar, then, is whether the sale of the residential property by Mr. Layne during Mrs. Boggs's incapacity converted it from real to personal property, thereby removing it from the estate and rendering the option ineffective. The leading authority on this issue appears to be *Bryson v. Turnbull*, 194 Va. 528 (1953), in which the court looked at the judicially-approved sale of land by the conservator of an incompetent testator. There, the court held that where land is sold by order of the court for any purpose, the character of the property should be changed only so far as may be necessary to accomplish the particular purpose. *Id.* at 533–34. Where an incompetent's real property is sold through compulsory proceedings, the court adopted the rule that the money proceeds paid into court will continue to be considered as real property until its nature is changed voluntarily by the owner, who has a right to elect to treat it as money. *Id.* Applying this rule in *Bryson*, then, the court held that the proceeds of a guardian's sale of real property would pass under the incompetent testator's will as real estate, to those to whom she had devised those lands. *Id.* at 536.

The general holding in *Bryson* has been codified in Va. Code § 64.1–62.3, which provides that:

> [a] bequest or devise of specific property shall, in addition to such property as is part of the estate of the testator, be deemed to be a legacy of a pecuniary amount if such specific property shall, during the life of the testator and while he is under a

---

[1] It is possible that an option to purchase property might be sold before the underlying property has yet been acquired by the optionor, at least while the party selling the option is living. However, in such cases, the optionor would have agreed to bear the contractual obligation of obtaining the property at some point in the future, when the optionee chooses to exercise the option. In the case of an option created by will, though, the testator can undertake no such obligation and must therefore be restricted in her ability to create an option to property already in her possession.

> disability, be sold by the conservator, guardian, or committee for the testator . . . .

By its terms, this language applies only to sales by judicially-appointed representatives of an incompetent testator and will be effective only where the sale was in the agent's capacity as a representative of the court. The parties have presented no case law or statutory provision which would extend this proposition to sales executed by attorney-in-fact acting pursuant to a durable power of attorney. In fact, the legislative history of Senate Bill No. 727, which amended and reenacted Va. Code § 64.1–62.3 in the 1991 Session of the General Assembly, indicates to the Court that the Legislature has actually considered and rejected just such an extension.

Thus, the Court finds that the holding in *Bryson* does not apply to the sale of real estate executed by Mr. Layne in the case at bar. Although Mr. Layne served both as guardian and as attorney-in-fact for Mrs. Boggs, he sold Mrs. Boggs's residence solely in his capacity as attorney-in-fact. He did not seek court approval for the sale but chose instead to exercise his authority under the durable power of attorney. *See e.g., Creasy v. Henderson*, 210 Va. 744, 745 (1970) (a durable power of attorney may be exercised to sell an incompetent testator's estate, if necessary, either with or without the testator's knowledge). Consequently, the court must conclude that the sale of Mrs. Boggs's residence converted the real property into personal property and removed the residence from Mrs. Boggs's estate.

*Intent*

This result is in accord with Va. Code § 11–9.1, which permits a principal to vest his agent with powers that survive the principal's disability through a durable power of attorney. Specifically, this section states that:

> All acts done by the attorney-in-fact or agent, pursuant to such power or authority, during the period of any such disability, incompetence or incapacity, shall have in all respects the same effect . . . and bind the principal as fully as if the principal were not subject to such disability, incompetence, or incapacity.

Thus, the statute directs the Court to analyze the transaction in question as though Mrs. Boggs had not been incompetent at the time of the

sale. The traditional rule is that a competent principal will be bound by the acts of her agent, within the scope of the agent's ostensible or apparent authority. *East Augusta Mutual Fire Insurance Co. v. Hite*, 219 Va. 677, 680 (1979). This rule applies where the agent has been vested with the authority to sell or dispose of real property. *Id.* at 680–81.

An examination of the durable power of attorney executed by Mrs. Boggs reveals that the actual extent of the authority granted to Mr. Layne was considerable. Mrs. Boggs specified that "[t]his power of attorney shall not terminate upon my disability," and she ratified and confirmed, in advance, all actions which might subsequently be taken by her attorney-in-fact. Of particular relevance to the case at bar, the fifth section of the document authorizes Mr. Layne, in his capacity as attorney-in-fact, to:

> enter upon and take possession of any lands, buildings or other improvements or appurtenances to lands belonging to me now or in the future . . . and to sell or lease such property or any part of or interest in any such property, and make, execute and deliver any deed, mortgage, or lease, with or without covenants and warranties, with respect to such property.

It is thus apparent to the Court that Mr. Layne was acting within his authority as Mrs. Boggs's attorney-in-fact when he sold the property at 1325 Kenwood Lane. Had she been competent at the time, Mrs. Boggs would clearly have been bound by that sale, under the ordinary rules of agency. Even though she appears to have been incompetent at the time of the sale, however, § 11–9.1 instructs the court to ignore that disability in determining the effect of her agent's actions. Accordingly, the Court finds that Mrs. Boggs is bound by Mr. Layne's actions during her disability. The subsequent ratification and confirmation by Mrs. Boggs of her agent's actions is sufficient to impute to her the intent to sell the property, thereby removing it from her estate.

### Conclusion

By the language of her will, Mrs. Boggs granted an option to Mr. Sloan to purchase her residence at 1325 Kenwood Lane. In order for that testamentary gift to be valid, however, the property must have been "property of the estate" at the time of her death. To be sure, the

sale by Mr. Layne prior to Mrs. Boggs's death removed the physical property itself from her estate. The question then becomes whether the act of Mr. Layne, as Mrs. Boggs's attorney-in-fact, was sufficient to convert the proceeds of the sale from real to personal property, thereby defeating the testamentary gift.

Reviewing the authorities discussed above, the Court can find no reason to treat the cash proceeds of the sale as though they remained real property. In the first instance, the reasoning of the *Bryson* court is inapplicable to this case, primarily because no judicial involvement was involved in the sale. Section 64.1–62.3 is also inapplicable, for much the same reason. Additionally, the scope of the durable power of attorney was broad enough to allow the Court to impute to Mrs. Boggs the intent to remove the property from the estate by the sale. Accordingly, the Court finds that the real property subject to the option, the residence at 1325 Kenwood Lane, is no longer "property of the estate," and that the testamentary gift of the option must therefore fail.